631 F.Supp. 1554 (1986)
Jack D. BASTIEN, Arthur F. O'Hare, Louis E. Werner, Jr., Michael J. Kickman, Arla E. Reed, Thomas W. Yager, Ronald B. Burt, Plaintiffs,
v.
R. ROWLAND & CO., Joseph G. Wohl, Carol Wohl, David Weiss, Irwin Rosenthal, Jacob W. Heller, Herman Schwartzman, Leonard I. Weinstock, David I. Weinstock, David M. Garelik, Andrew W. Dave, Marcel Shwergold, Elkan Abramowitz, et al., Defendants.
No. 82-950C(6).
United States District Court, E.D. Missouri, E.D.
April 17, 1986.
*1555 David G. Lupo, St. Louis, Mo., for plaintiffs.
Alan C. Kohn, Robert A. Useted, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., for defendants Laventhol & Horwath.
John J. Horgan, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, Mo., for defendants Weiss, Rosenthal, Heller, Schwartzman, Weinstock, Garelik, Dave, Sherwgold, Abramowitz, Coller, Horowitz, Mann, C. Rand, Jacobs, Mass, Fingerman, and Weiss, Rosenthal, Heller and Schwartzman, a dissolved legal partnership.
Daniel Cohen, Buchman, Buchman & O'Brien, New York City, Evans & Dixon, St. Louis, Mo., for defendants Irving Cohen, Irving Cohen d/b/a The Astor Group, I.C.A. Productions Inc., Investors Inc., d/b/a Irving Cohen & Assoc. and Stanley Levine.
Harry O. Moline, Sherri L. Cranmore, Moline, Tegethoff, Ottsen, Mauze & Leggat, St. Louis, Mo., Susan G. Rosenthal, Winick & Rich, P.C., New York City, for Ted Shapiro.
Veryl L. Riddle, John Michael Clear, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for R. Rowland.
Arent, Fox, Kintner, Plotkin & Kahn, George R. Kucik, David Dekker, Washington, D.C., for Irvin Cohen, I.C.A. Productions, Inc., Irving Cohen & Associates, Inc.
Stefan J. Glynias, Evans & Dixon, St. Louis, Mo., for Daniel Cohen.
Edward L. Dowd, Jr., Dowd & Dowd, St. Louis, Mo., for Harold Rand.
Joel Preston, pro se.

MEMORANDUM AND ORDER
GUNN, District Judge.
IT IS HEREBY ORDERED that the motions of defendants for summary judgment be and are granted.
This Court granted summary judgment in favor of defendants on all counts of plaintiffs' complaint at the conclusion of a hearing held March 31, 1986 at 9:00 a.m. in open court. The Court files this memorandum to state the basis for its ruling from the bench.

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiffs in this case are eight wealthy individuals. At various times in 1975 and 1976, they purchased through R. Rowland & Co., a St. Louis securities broker, limited partnership interests in five limited partnerships[1] organized for the purpose of *1556 buying and distributing motion pictures. Motion picture distribution is a high-risk enterprise, and for this reason plaintiffs were, through offering memoranda made available to them prior to the time of their investment, counselled to purchase limited partnership interests only if they could afford a total loss of their investment. See Offering Memorandum of Antares Associates,[2] submitted as Exhibit B to the motion of the Rowland defendants for summary judgment, p. ii.
Under the United States tax laws controlling at the time of plaintiffs' purchases, however, investment in motion picture limited partnerships was a recognized legal means of sheltering income from taxation. It was at that time possible for investors in these partnerships to take deductions greatly in excess of their actual investment in the partnerships, and the chief return anticipated by these plaintiff-investors was a substantial tax benefit.[3]
Prior to purchasing interests in the limited partnerships at issue, plaintiffs were required to complete "Investor Questionnaires" representing that each had a net worth in excess of $200,000 and that some portion of the gross annual income of each was taxable at a rate of 50% or higher. See Investor Questionnaires, submitted as Exhibit A to the motion of the Rowland defendants for summary judgment. Upon completion of this questionnaire, each plaintiff received a confidential offering memorandum covering the partnership in which he or she was investing. These memoranda prominently identified the securities involved as "high risk" investments. The memoranda emphasized the potential tax advantages flowing from the investments but fully disclosed that the benefits were contingent upon the then-operative tax laws remaining in effect. The memoranda further disclosed that the United States Congress had given consideration to the elimination of tax shelter benefits for holders of motion picture limited partnership interests. See offering memorandum at 3-15; 39-55.
In 1976 Congress acted to eradicate the favorable tax treatment extended to these interests. The Tax Reform Act of 1976 limited the allowable deduction for motion picture limited partnerships to the amount an individual investor had actually placed "at risk"  that is, to the amount of each plaintiff's investment.
Plaintiff-investors in the Alpine and Somerset partnerships were notified of this change in September 1976 by letter from Irving Cohen, general partner of those two partnerships. See letters of Irving Cohen to plaintiffs Werner, Kickham and Reed, submitted as Exhibit A to the motion of defendant Cohen for summary judgment. Defendant Cohen particularly alerted plaintiffs to the retroactive effect of the legislation.
Plaintiffs in all cases claimed pre-1976 Reform Act deductions for 1975 and 1976 and in some cases for subsequent years. The Internal Revenue Service challenged the deductions taken by plaintiffs and ultimately required them to pay back taxes and penalties for the deductions disallowed under the 1976 Act. The IRS permitted full deductions to cover plaintiffs' "at risk" investments. By 1978 all plaintiffs realized that their investments in the partnerships at issue in this case would not shelter their income. Additionally, the partnerships proved to be unprofitable. None of the movies owned by the partnerships enjoyed any kind of commercial success, and plaintiffs *1557 received no return on the capital they invested.
Plaintiffs filed suit in this Court on June 15, 1982.[4] In their original fifteen count complaint[5] plaintiffs alleged that defendants had defrauded them of their investment capital by organizing the limited partnerships in such a way that the partnerships would yield benefits to the general partners without returning a profit to the limited partner investors. Plaintiffs alleged, inter alia, that defendants effected the sale of the limited partnership interests by deliberately misrepresenting the tax benefits to accrue to plaintiffs, knowing the partnerships were not valid tax shelters; that the offering memoranda contained material misrepresentations and omissions concerning the cost to the partnerships of procuring the motion pictures and the method of payment for them; that defendant R. Rowland & Co. failed to perform due diligence with respect to the partnerships and failed to make full disclosure of the rate of commission it was receiving in its sales of limited partnership interests; that the defendants were involved in a national interlocking scheme to defraud investors; and that all the partnerships, along with unnamed and unnumbered others, were part of a mammoth securities offering, organized as individual partnerships so as to circumvent the registration and disclosure requirements of the Securities Act of 1933. Plaintiffs' complaint ran against R. Rowland & Co.; the New York law firm of counsel in organizing the limited partnerships, Weiss, Rosenthal, Heller & Schwartzmann; the St. Louis accounting firm alleged to have reviewed partnership accounts, Laventhol & Horwath; the general partners of the five partnerships in which plaintiffs invested, Richard W.A. Davis, Harold Rand, Irving Cohen, Joel Preston and Ted Shapiro; and the original limited partner of two of the partnerships, Stanley Levine. The complaint sought recovery under Rule 10b-5 promulgated under the Securities Exchange Act of 1934, common law fraud, breach of fiduciary duty, conversion and the Missouri Uniform Securities Act.
All defendants filed motions to dismiss on the ground that plaintiffs' complaint was barred on each count by the applicable statute of limitations. On February 25, 1983, Judge Meredith denied defendants' motions with respect to all counts other than Count XV arising under the Missouri Uniform Securities Act. Because plaintiffs had alleged concealment of the fraud by defendants so as to toll the running of the statute of limitations,[6] which raised a factual issue to be assumed in favor of plaintiffs at that stage in the proceedings, the Court concluded that dismissal of the complaint was not appropriate. Since, however, the equitable tolling doctrine was not available to suspend the running of the statute of limitations on the Missouri securities law claim, the Court dismissed Count XV. See Order of Count C dated February 25, 1983. Defendants thereafter filed answers denying every allegation of wrongdoing in plaintiffs' complaint.
The history of this case from the time it could be said to have been at issue is tortured. Disputes over discovery arose immediately, foreshadowing a three year battle over the scope and priority of discovery. The essential conflict between plaintiffs and defendants persisted through court hearings, Local Rule 7(C) conferences and referrals to magistrates. Defendants took the position from the outset that plaintiffs' claims had no merit and that discovery should be held to the five partnerships in which plaintiffs invested. Plaintiffs stood by their broader allegations of a *1558 national fraudulent scheme involving many more parties than had been named in the original suit, whose identities would only become clear in the course of discovery.[7]
The Court sought to resolve this fundamental conflict between the parties by referring the case to the Honorable David Noce, United States Magistrate, for clarification and resolution of discovery disputes. Judge Noce conducted two separate hearings on discovery and issued orders ruling on the proper scope and order of further discovery in the case. Judge Noce's orders prompted two separate petitions to the Eighth Circuit for extraordinary relief, the first by plaintiffs protesting that the scope had been set too narrowly, the second by defendants protesting that the scope was over-broad. The Eighth Circuit denied both petitions.
The Court involvement in the discovery process did not eliminate the difficulties. Plaintiffs persisted in their efforts to discover documents beyond the scope of the Magistrate's order. Defendants continued to object to plaintiffs' requests and to insist that plaintiffs submit to discovery requests to reveal the facts upon which their claims were based. By the time this Court inherited this case the file had grown to eight volumes, six of which contained primarily motions to compel and objections thereto.
The parties to this action met with this Court in chambers on July 31, 1985 with the purpose of entering into a stipulated agreement to complete discovery and move the case to trial. Plaintiffs submitted a proposed order to the Court. The stipulated agreement required that document production be completed in accordance with Judge Noce's order by August 31, 1985; that depositions would proceed thereafter; that all discovery would be complete by January 31, 1986; that dispositive motions would be filed by March 4, 1986; and that the case would proceed to trial on March 17, 1986. Plaintiffs' counsel informed the Court that he expected to take about two months in the presentation of plaintiffs' case.
This conference left the Court with the firm belief that the greatest interests of justice would be served by pushing this case, still in the early stages of preparation after three years, to trial. With that end in view the Court began to arrange its docket to assure that a minimum two month block of time would remain open beginning March 17, 1986. When, following the conference, a new flurry of discovery motions was forthcoming, threatening to reduce the litigation yet again to a battle of unproductive motion papers, the Court referred all discovery matters to the Honorable Robert Kingsland, United States Magistrate, for supervision and control.
Judge Kingsland took jurisdiction of the case on November 18, 1985 and immediately set a hearing to resolve outstanding disputes and arrange a schedule for depositions. When difficulties arose in the first scheduled depositions, this Court appointed a special master to oversee all future depositions. Although the schedule set was intensive, it appeared that discovery would be completed according to the parties' stipulated agreement.
On December 18, 1985, in the course of a hearing before Judge Kingsland, plaintiffs' lead counsel became ill. After reviewing the history of the case and giving consideration to the resources expended on the matter in the foregoing two months, the Court determined that the case should go forward as scheduled. This decision of the Court prompted a third petition by plaintiffs to the Eighth Circuit, which stayed discovery pending a hearing on writ of mandamus. After oral argument held January 14, 1986 the Eighth Circuit denied the writ and ordered an extension of the discovery cut-off date until February 19, 1986.
Discovery thereafter resumed on an intensive schedule involving daily depositions conducted in New York and Los Angeles as *1559 well as St. Louis under the supervision of a special master. Problems persisted, and plaintiffs protested that the schedule did not permit them proper preparation. The Court refused to continue the case.
On March 4, 1986 all defendants filed motions for summary judgment in accordance with the stipulated order. The gist of each motion was that plaintiffs had failed to come forward with any evidence of any fact that would support their claims. With their motions defendants filed substantial supporting documents tending to disprove plaintiffs' allegations. Nonetheless, in view of the extreme circumstances surrounding the final pre-trial stage of the case, the Court denied defendants' motions on March 14th. See Order of this Court dated March 14, 1986.
At the opening of trial on March 17th, prior to the commencement of voir dire, the Court announced that on reconsideration of defendants' motions it would vacate its March 14th order. The plaintiffs were then on notice as they commenced their case that the Court had once again taken defendants' motions under advisement. Defendants then formally renewed their motions on the record. Since the essence of defendants' motions lay in plaintiffs' failure to produce any evidence in support of their claims, the Court admonished plaintiffs to come forward at the outset of trial with anything that would satisfy the Rule 56(e) burden on a nonmoving party on motion for summary judgment.
Trial proceeded for three-and-a-half days, during which time plaintiffs completed the direct examination of one witness. At that point the Court recessed the action. Plaintiffs were granted an additional ten days to file materials in opposition to defendants' motions prior to a hearing on March 31st. At the hearing plaintiffs argued fervently for their legal theories but once again failed to come forward with any evidence that supported any underlying fact of their complaint. The Court therefore granted defendants' motions from the bench.

DISCUSSION
Summary judgment is an extreme remedy, ordinarily available only to a movant who "has established his right to judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." Greco v. ABC Transnational Corp., 623 F.Supp. 104, 105 (E.D. Mo.1985), citing Steele v. Armour Co., 583 F.2d 393 (8th Cir.1978). The burden of proof is on the moving party, and the Court should not grant summary judgment unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The party opposing a motion for summary judgment, however, cannot rest upon the mere allegations of his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See generally 10A Wright, Miller & Kane Federal Practice & Procedure § 2739 (1985). Where the nonmoving party fails to meet this obligation, summary judgment serves a "salutory purpose in avoiding a useless, expensive, and time consuming trial where there is no genuine, material fact to be tried." Steele, supra.
It is the judgment of this Court that plaintiffs have failed to meet the burden placed upon them by defendants' motions. After hearing plaintiffs' evidence at trial and reviewing the documents submitted in opposition to defendants' motions, the Court concludes that plaintiffs are without evidence to support any of the factual allegations of their complaint, and that a two month trial would involve the parties and the Court in needless  if not abusive  delay and expense. See Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir.1986).[8]
*1560 The sole piece of evidence plaintiffs have submitted that tends to support any of their allegations is the affidavit of Frank Johnson, obtained after trial of the case had already begun, in which the affiant states from personal knowledge that defendant W.A. Davis paid considerably less for certain foreign films purchased in 1975 than the price at which the films were entered in the account books of the partnership for which they were purchased. This single affidavit does not only represent a meager evidentiary challenge to the substantial array of documents assembled by defendants directly disproving the allegations on which plaintiffs seek to go forward: the affidavit contains no attestations of any facts at issue in this case. The business negotiations as to which Mr. Johnson claims personal knowledge did not involve any of the partnerships in which plaintiffs invested and hence do not substantially support any allegations concerning those partnerships. Mr. Johnson attests to negotiations solely with defendant Davis, and in no way implicates the other named defendants to this action. Further, Mr. Johnson's averments with respect to the rates of commission demanded by R. Rowland & Co. do not tend to establish any wrongdoing by that defendant, as they fall within the amounts disclosed in the offering memorandum as having been allocated to finders' fees, brokers' commissions and comparable disbursements.
With respect to plaintiffs' specific claims, this Court finds that plaintiffs have failed to come forward with any evidence supporting essential elements of each cause of action. Thus, defendants are entitled to judgment as a matter of law. Fontenot, supra.
Plaintiffs have submitted no evidence that would support a finding of fraudulent misrepresentation by any defendant.[9] In fact, the extensive testimony of defendant Hermann Schwartzmann tended substantially to demonstrate that the offering memoranda distributed to plaintiffs prior to their investments made exhaustive disclosure of the partnership organization and risk factors. Material misrepresentation is an essential element of both 10b-5 and common law fraud.
Defendants through deposition testimony of plaintiffs established that none of the plaintiffs had in any case relied upon the offering memoranda or, by implication, any alleged misrepresentations included therein. Defendants thereby disproved an essential element of both 10b-5 and common law fraud. In lieu of submitting any evidence of reliance to counter defendants' proof, plaintiffs argued extensively that the instant case should be regarded as an omissions case, in which reliance should be presumed. See Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). The Eighth Circuit has held that the Affiliated Ute rule does not extend to cases in which omissions are alleged in a document, reasoning that in such a case there is no need to presume reliance. Vervaecke v. Chiles, Heider & Co., 578 F.2d 713 (8th Cir.1978). Plaintiffs have therefore failed to come forward with evidence on an essential element of their claims under 10b-5 and common law fraud.
Plaintiffs do not indicate that they have evidence in support of their allegations of breach of fiduciary duty or theories of racketeering activity.
Judge Meredith in 1983 declined to dismiss plaintiffs' complaint solely on the ground that plaintiffs had pleaded fraudulent concealment. Three years later plaintiffs are without anything to support that pleading. Without proof of such concealment, all of plaintiffs' claims are barred by the statute of limitations. Plaintiffs have submitted excerpts of depositions indicating *1561 that they did not suspect the fraud until they discussed these investments with Don Doerge, a former broker with R. Rowland & Co., in 1980. This testimony does not satisfy plaintiffs' burden on the issue of fraudulent concealment. The vast amounts of discovery materials contain no evidence of active conduct by defendants subsequent to the alleged wrongdoing that precluded earlier discovery of the claims. See Hasenyager v. Board of Police Commissioners, 606 S.W.2d 468, 472 (Mo.App. 1980).
Upon critical review of the file in this case and the history of its growth, this Court regrets the profligation which the case represents. See Jaquette v. Black Hawk County, Iowa, 710 F.2d 455 (8th Cir.1983). An inordinate amount of court time has been devoted to this case, both at the trial and appellate levels. The Court has been extensively and unusually involved in the discovery process, although this involvement does not seem in any way to have smoothed the matter's progression to trial. Preparation of the case has also been at extraordinary expense to the parties.[10]
Throughout the course of this litigation defendants have raised serious challenges to the submissibility of plaintiffs' case, beginning with objections to the suit as time-barred, proceeding through protestations of complete ignorance of any facts to support the claim, and concluding with motions for summary judgment asserting in substantial terms that plaintiffs are entirely without evidence to support any of their claims. In the face of these challenges and in view of the extreme circumstances under which final preparation for trial was completed, the Court has sought to give plaintiffs every benefit and every opportunity to prove their case. See Order of this Court dated March 27, 1986. Plaintiffs were given the benefit of relaxed standards of pleading on their RICO count. They were permitted to file pre-trial materials that failed in almost every particular to comply with the pre-trial order of this Court. They were permitted to proceed to trial without meeting the obligation to respond substantively to defendants' motions for summary judgment. They were permitted to introduce previously unidentified exhibits at trial according to a numbering system understood only by them. The Court permitted this in the interest of providing plaintiffs every opportunity to demonstrate that a trial of this matter was warranted.
IT IS FURTHER ORDERED that plaintiffs' motion for default judgment against defendant W.A. Davis be and is denied. The general rule with regard to entry of judgment of default against one of several defendants who may be found jointly and severally liable on plaintiff's claim is set forth in Frow v. De la Vega, 15 Wall. 552, 82 U.S. 552, 21 L.Ed. 60 (1872). The Supreme Court in Frow, reasoning that any other holding could result in inconsistent verdicts, held that entry of judgment against the party in default must await adjudication of liability on the merits with regard to the answering parties. Whatever judgment subsequently entered against those parties would thereafter run against the defaulting party as well. The Frow rule has been extended to grant to a defaulting party the benefits of a successful motion to dismiss, Barnes v. Boyd, 8 F.Supp. 584 (S.D.W.Va.1934), cert. denied, 294 U.S. 723, 55 S.Ct. 550, 79 L.Ed. 1254, aff'd on other grounds, 73 F.2d 910 (4th Cir.1934), as well as a successful motion for summary judgment, Davis v. National Mortgagee Corp., 349 F.2d 175 (2d Cir. 1965). The summary judgment in this case therefore accrues to the benefit of defendant Davis as well as to those parties who have actively defended against plaintiffs' claims. Any other result would indeed be inconsistent and unsupportable. See generally 10 Wright, Miller & Kane Federal Practice & Procedure § 2690 (1985).
*1562 IT IS FURTHER ORDERED that plaintiffs' motion to strike the pleadings of defendant Preston for failure to attend his deposition be and is denied. For the reasons elaborated above, defendant Preston enjoys the benefit of the summary judgment entered in this case.
IT IS FURTHER ORDERED that plaintiffs' motion for continuance of the trial setting for improper adjournment be and is denied as moot.
NOTES
[1] The five limited partnerships in which plaintiffs purchased interests are identified below, along with the amount invested by each plaintiff:

Jack D. Bastien Antares Associates $12,000 ¼
Michael J. Kickham Alpine Associates $22,500 ½
Arthur F. O'Hare Antares Associates $12,000 ¼
Arla E. Reed Somerset Associates $24,000 1
Jane E. Tschudy Antares Associates $12,000 ¼
E. Louis Werner Alpine Associates $45,000 1
 Avalon Associates $30,000 1
Thomas W. Yager Cypress Associates $13,000 ¼
Ronald B. Burt Somerset Associates $24,000 1

See Plaintiffs' Exhibit A attached to original complaint.
In addition to these five limited partnerships, the allegations in plaintiffs' complaint touched on numberous others organized by the same parties for the same purposes. The additional partnerships proved the source of extensive discovery disputes discussed more fully in the body of this memorandum
[2] The offering memoranda of the five limited partnerships involved in this case are substantially similar. Hence the Court will refer throughout to the Antares memorandum in support of its judgment with respect to all five partnerships.
[3] It appears from the record, for example, that plaintiff Bastien took a deduction of $50,746 for his $12,500 investment while plaintiff Werner deducted $230,583 for his investment of $75,000.
[4] This case was originally assigned to Court 2. In January 1983 it was reassigned to Court C, whence, in June 1983, it was reassigned to Court 4. In May 1985 it was reassigned to Court 6. Along the way the case has been three times referred to United States Magistrates and has been the subject of three petitions to the Eighth Circuit for extraordinary relief.
[5] Plaintiffs' original complaint actually comprised only twelve counts, since Counts I-III consisted solely of factual allegations and did not contain a prayer for relief.
[6] Judge Meredith found the limitations period applicable to plaintiffs' complaint to be two years on all surviving counts. See Order of Court C dated February 25, 1983.
[7] Plaintiffs' first action in this case was the filing of a motion to have this matter declared complex litigation. This motion was accompanied by a motion for a protective order to shield plaintiffs from the obligation of revealing the theory of their case "prematurely." Both motions were denied by order of Judge Noce on September 14, 1983.
[8] The crucial question for the court is whether there is a "genuine issue" of fact concerning any essential element of the claim on which judgment is being sought. If the moving party can show that there is no evidence whatever to establish one or more essential elements of a claim on which the opposing party has the burden of proof, trial would be a bootless exercise, fated for an inevitable result but at continued expense for the parties, the preemption of a trial date that might have been used for other litigants waiting impatiently in the judicial queue, and a burden on the court and the taxpayers. Aside from counsel's fees, which this court has frequently fixed at rates of $100 per hour or more, a Rand Corporation study has estimated the public cost of the average jury trial in federal court to be over $7000. [footnote omitted] Hence, every hour of litigation is costly both to the parties and the taxpayers, and the expense should not be incurred needlessly.

Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir.1986).
[9] As indicated above, the affidavit of Frank Johnson does not contain averments concerning any partnership in which any plaintiff invested.
[10] Plaintiffs' counsel filed an affidavit with the Eighth Circuit two weeks before trial averring that the litigation had already cost plaintiffs alone in excess of $197,000, which, the Court is saddened to note, is an amount in excess of the amount of investment capital placed at risk by plaintiffs in 1975 and 1976.