# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2306
_____

| | |
|---|---|
| Angelo Iafrate Construction, LLC, | * |
| | * |
| Plaintiff/Appellant, | * |
| | * |
| v. | * |
| | * |
| Potashnick Construction, Inc.; | * |
| Travelers Casualty and Surety | * |
| Company, | * |
| | * |
| Defendants/Appellees. | * |

_____

No. 03-2425

_____

Appeals from the United States
District Court for the
Eastern District of Arkansas.

| | |
|---|---|
| Angelo Iafrate Construction, LLC, | * |
| | * |
| Plaintiff/Appellee, | * |
| | * |
| v. | * |
| | * |
| Potashnick Construction, Inc., | * |
| | * |
| Defendant, | * |
| | * |
| Travelers Casualty and Surety | * |
| Company, | * |
| | * |
| Defendant/Appellant. | * |

Submitted: February 9, 2004
Filed: June 1, 2004

Before LOKEN, Chief Judge, BOWMAN, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Angelo Iafrate Construction, LLC (Iafrate) appeals from the district court's[1] grant of Travelers Casualty and Surety Company's (Travelers) motion for partial summary judgment and the judgment entered in favor of Travelers after trial on the remaining contract claims. Travelers cross-appeals, arguing that the district court erred in entering a default judgment against Potashnick and abused its discretion when it failed to award attorneys' fees.[2] We affirm.

## I.

The Arkansas State Highway Commission (the Commission) contracted with Potashnick to do grading and structural work on three portions of highway, known as Jobs 51, 52 and 53. Delay of the work on the second portion of the highway, Job 52, forms the basis of this dispute. The contracts incorporated the Arkansas Standard Specifications for Highway Construction, Edition of 1991 (1991 Standard Specifications). Aetna, now Travelers (as Aetna's successor in interest), served as surety for the contracts, signing performance and payment bonds for each of the jobs. The Commission later contracted with T.L. James & Co., Inc., now Iafrate (as T.L. James' successor in interest), to complete base work and do surfacing work on the

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[2]We deny Travelers' motion to strike portions of appellant's brief.

same portions of highway addressed in Potashnick's contracts (Jobs 56 and 57). Job 56 included the segments from both Job 51 and Job 52.

Potashnick faced financial problems in 1997, and Travelers began receiving notice of its difficulties in August 1997. Work at the contract site slowed to a halt, and by December 31, 1997, Potashnick informed the state's chief engineer that it lacked the financial ability to continue Jobs 52 and 53. The Commission acknowledged the voluntary default, and Travelers received the termination notice in January 1998. The Commission issued a suspension order, as required by the performance bond, allowing Travelers 60 days in which to prepare to resume work on Job 52. The Commission granted Travelers an extension and ultimately delayed the resumption of the assessment of working days until May 7, 1998. During the suspension, Travelers hired Barrington Consulting, Inc. to negotiate with contractors and to supervise the completion of the projects. Travelers hired several contractors to complete different aspects of the work. The work was completed and accepted by the Commission on July 24, 1998.

The Commission then assessed liquidated damages against Travelers as specified in the Potashnick contracts. Travelers followed the administrative appeals process and filed a complaint before the Arkansas State Claims Commission to seek reassessment of the liquidated damages. The parties reached a settlement under which Travelers paid $37,532.11, and its complaint was dismissed with prejudice.

The delay in work on Job 52 affected Iafrate's ability to complete Job 56. Iafrate therefore filed an administrative complaint against the Commission for delay damages. A stay order was entered and the Commission negotiated an agreement with Iafrate in which it assigned to Iafrate its rights as obligee under the performance and payment bonds. Iafrate then filed a complaint against Travelers and Potashnick. Potashnick failed to appear, and a clerk's default was issued against it. Travelers litigated the case, and the district court granted partial summary judgment in its favor,

holding that Iafrate's theory of liability based on its contract rights as a third party beneficiary failed as a matter of law and finding that there was no breach of an implied contract. The remaining breach of contract claims proceeded to a bench trial, following which the district court concluded that Travelers was not liable. The court found that Iafrate had failed to show that Travelers "breached any duty under the performance bond," that Travelers had no duty under the bond to disclose its knowledge of the principal's potential financial difficulties prior to default, and that once default had been declared, "Travelers took all reasonable steps to effect the completion of the job in a timely manner." D. Ct. Judgment of Sept. 19, 2002, at 12. The district court later denied Travelers' motion for attorneys' fees. D.Ct. Order of May 29, 2003.

Iafrate later moved for a default judgment against Potashnick, which the court granted in the amount of $989,200.93.[3] Travelers filed an opposition to Iafrate's motion for judgment against Potashnick, arguing that the district court would be taking an incongruous position if it found on the merits for Travelers but entered a default judgment against the primary obligor, Potashnick. The district court concluded in its order, however, "that the entry of default against Potashnick is not inconsistent with the rulings of the Court regarding the liability of Separate Defendant, Travelers. The facts which were presented at trial to exonerate Travelers do not necessarily exonerate Potashnick on all claims." D. Ct. Order of April 29, 2003.

---

[3]The Clerk entered default under Fed. R. Civ. P. 55(a) against Potashnick on July 12, 2001; the district court entered default judgment under Fed. R. Civ. P. 55(b)(2) on April 29, 2003.

-4-

## II.

This case is in federal court based on diversity jurisdiction. We conclude that we have subject matter jurisdiction under the recent holding in GMAC Commercial Credit LLC v. Dillard Dep't Stores, 357 F.3d 827 (8th Cir. 2004), in which we held that an LLC's citizenship is the citizenship of its members. Id. at 829. Through supplemental briefing, Iafrate has established that its two members, Angelo E. Iafrate and Dominic Iafrate, are both citizens of Michigan. Because Travelers is incorporated and has its principal place of business in Connecticut and Potashnick has citizenship only in Missouri, diversity of citizenship exists under the holding announced in GMAC. 28 U.S.C. § 1332. Arkansas law controls this diversity action. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

## A.

We review the district court's grant of summary judgment de novo. Credit Card Debt Solutions, Inc. v. Home Fed. Bank, 363 F.3d 805, 808 (8th Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. We review the district court's factual findings for clear error and its legal conclusions de novo. Consolidated Elec. & Mechs., Inc. v. Biggs Gen. Contracting, Inc., 167 F.3d 432, 434 (8th Cir. 1999). We conclude that the district court properly disposed of these contract claims.

Iafrate contends that Travelers breached its performance bond obligations both to the Commission, enforceable by Iafrate through assignment, and to Iafrate directly. The performance bond is a contract signed by three parties: the Commission as the obligee, Potashnick as the principal obligor, and Travelers as the secondary obligor. Under the contract, Potashnick and Travelers owed a duty to the state to complete performance according to the project contracts. Travelers' duty is established by the language of the bond. See New Amsterdam Casualty Co. v. Detroit Fidelity & Surety Co., 58 S.W.2d 418, 419 (Ark. 1933). Under the bond, Travelers' duty was to complete the project according to the contract in the event Potashnick defaulted.

-5-

Summary judgment was appropriate on Iafrate's third party beneficiary claims because no material issue of fact exists as to whether Iafrate was an intended beneficiary under the contract. Iafrate argues that because they knew that Iafrate would be affected by the timeliness of Potashnick's work, Travelers and Potashnick owed it a contractual duty. It is a general rule under Arkansas contract law, however, that a contract "will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties." Howell v. Worth James Constr. Co., 535 S.W.2d 826, 828 (Ark. 1976). The party does not have to be named in the contract, but the parties to the contract must have intended to confer a direct benefit upon the third party. Id. at 828-29 (citing Carolus v. Ark. L&P Co., 262 S.W. 330 (1924)). Construction contracts may include other prime contractors as third party beneficiaries, but such an intent must be evidenced in the language of the contract. See, e.g., Little Rock Wastewater Util. v. Larry Moyer Trucking, 902 S.W.2d 760, 763-64 (Ark. 1995).

Iafrate contends that several sections of the Standard Specifications create a duty for Potashnick to work with other contractors, thereby establishing an intent to make such contractors beneficiaries. Section 105.08, entitled "Coordination and Cooperation Between Contractors" states that "[w]hen separate contracts are let adjacent to or within the limits of any one project, the work of each Contractor shall be conducted so as not to interfere with or hinder the progress or completion of the work being performed by other Contractors." 1991 Standard Specifications § 105.08. The specifications also state, however, that they are "not intended" to make "the public or any member thereof a third party beneficiary thereunder, or to authorize anyone not a party to the contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of the contract." 1991 Standard Specifications § 107.14.

Performance obligations due under a performance bond are commonly owed solely to the obligee, whereas payment bonds are intended to ensure that laborers and

material suppliers will be paid in the event of a default.  See Pa. Nat'l Mut. Cas. Ins. Co. v. City of Pine Bluff, 354 F.3d 945, 949 n.2 (8th Cir. 2004); Restatement (Third) of Suretyship & Guaranty § 31, comment b.  Here, the performance bond does not specify any beneficiaries, but the payment bond includes as beneficiaries those parties with claims for "materials, labor and supplies" provided incident to the contract work. Iafrate does not fall within this intended class of beneficiaries and therefore may not recover as a third party beneficiary.

Iafrate also argues that Travelers and Potashnick owed the Commission a duty to inform the state of Potashnick's financial problems when it first became aware of the problems in August 1997.  Iafrate argues that the standard specifications impose an affirmative duty on the surety because they state that the surety must advise the Highway Department if it is having any difficulty that "may affect its ability to perform."  1991 Standard Specifications § 103.05.  If the language of a policy is unambiguous, effect must be given to the plain language of the policy without resort to the rules of construction.  Castaneda v. Progressive Classic Ins. Co., No. 03-1258, 2004 WL 965938 (Ark. May 6, 2004).  The plain meaning of section 103.05 does not support Iafrate's argument.  The section directly addresses the surety and requires it to give notice only of a difficulty in its own finances that would preclude its ability to perform on the bond.  Because Travelers was in no financial trouble itself, it did not breach this duty of notification.

Iafrate contends that Travelers should have known of Potashnick's default and begun performance earlier.  Travelers, however, did not have a common law or contractual duty to begin performance any earlier than it did.  Iafrate's attempted analogy to United States v. Minn. Trust. Co., 59 F.3d 87, 90 (8th Cir. 1995), in which we stated that a surety is responsible to ascertain when performance is due if the contract does not provide for notice to the surety, is inapposite because Travelers' performance bond did provide for notice.  The performance bond stated that the chief engineer would give notice of default or termination to both the contractor and the

surety according to section 108.08 of the 1991 Standard Specifications, triggering a suspension period of 60 days.

In addition, Travelers' nondisclosure of Potashnick's pending financial problems did not result in a breach of its duty of timely completion under the contract. Its timely completion is instead governed by the time frame for suspension and resumption orders provided for in the performance bond and the amount of working days specified in the contract. Working days, defined in the contract, are not assessed during poor weather or during certain winter months. The contract specifies that if the contractor or surety exceeds the specified number of working days allocated to complete the work, damages will be based on specified daily liquidated damages. In this case, Travelers has already settled the liquidated damages dispute with the Commission. The Commission ultimately declared Travelers' completion of the project timely, and the claim related to liquidated damages was dismissed with prejudice by the Claims Commission. Iafrate therefore may not now attempt to enforce the Commission's right to timely completion or to claim damages on that basis.

Finally, Iafrate argues that it may recover from Travelers based on Travelers' duty to indemnify the Commission for claims "brought because of any injuries or damage received or sustained by any person, persons, or property on account of the operations of the said Contractor." 1991 Standard Specifications § 107.14. Because Iafrate does not have its own contract right under the specifications, however, it may only recover under this provision as assignee of the Commission. Travelers' duty to indemnify only arises if Iafrate's claim against the Commission is successful and the damages Iafrate claims on that basis are "clearly and unequivocally" within the scope of the indemnity agreement. See Weaver-Bailey Contractors, Inc. v. Fiske-Carter Constr. Co., 657 S.W.2d 209, 210-11 (Ark. Ct. App. 1983).

"Indemnity agreements are construed strictly against the party seeking indemnification." Chevron U.S.A. Inc. v. Murphy Exploration & Prod. Co., No. 03-612, 2004 WL 396263, at *3 (Ark. Mar. 4, 2004). Moreover, "the intent of the indemnitor's obligation to indemnify against [the losses] must be expressed in clear and unequivocal terms and to such an extent that no other meaning can be ascribed." Id. The scope of Travelers' duty to indemnify under section 107.14 does not clearly encompass Iafrate's claim against the Commission for economic delay damages. The language of that section instead reflects an intent to impose a duty to indemnify claims for personal injury and property damage caused by the work performed under the contract.

**B.**

The default judgment against Potashnick is a subject of both Iafrate's appeal and Travelers' cross-appeal. Because a surety and its principal are jointly liable within the limits of the performance and payment bonds, both parties claim that a default judgment against Potashnick affects the liability of Travelers as its surety. A default judgment entered by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint. See Taylor v. City of Ballwin, 859 F.2d 1330, 1333 n.7 (8th Cir. 1988); Fed. R. Civ. P. 55(b)(2).

Iafrate argues that the district court erred in granting judgment on the merits to Travelers because the default judgment against Potashnick is binding on Travelers. Iafrate invokes the language in Drill South, Inc. v. International Fidelity Ins. Co., 234 F.3d 1232 (11th Cir. 2000) (per curiam), which states that "a surety is bound by any judgment against its principal, default or otherwise, when the surety had full knowledge of the action against the principal and an opportunity to defend." Id. at 1235. Drill South involved a default judgment against a principal that was entered without objection from the surety and before the surety fully litigated its own case. We decline to extend the language in Drill South to cover a situation where, as here,

the surety has obtained a judgment in its favor before the default judgment against its principal was entered. We therefore reject Iafrate's circuitous reasoning.

Travelers, concerned that it may face future lawsuits, argues that the district court erred in entering the default judgment after ruling in Travelers' favor on the merits, resulting in inconsistent verdicts in violation of Frow v. De La Vega, 82 U.S. 552 (1872). When co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment. See Frow, 82 U.S. at 554. To avoid such inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party. Bastien v. R. Rowland & Co., 631 F.Supp. 1554, 1561 (E.D. Mo. 1986), affirmed without opinion 815 F.2d 713 (8th Cir. 1987); see also Restatement (Third) of Suretyship and Guaranty § 68(1). The common-defense doctrine in Arkansas law similarly states that if an answering party asserts "a defense on the merits that equally applies to the other defendant," the success of the defense "operates as a discharge to all the defendants." Sutter v. Payne, 989 S.W.2d 887, 889 (Ark. 1999); see also Davenport v. Lee, 72 S.W.3d 85, 89 (Ark. 2002). The doctrine "applies even if the defaulting defendant makes his or her first appearance after the answering defendant is no longer in the case." Sutter, 989 S.W.2d at 890. Parties are not similarly situated and a default judgment does not establish inconsistent judgments, however, if the liability of the defaulting party is based on independent wrongful acts or a legal theory distinct from the one under which the answering party prevailed. See Bastien, 631 F. Supp. at 1561; Davenport, 72 S.W.3d at 89.

Even if the entry of the default judgment resulted in a judgment inconsistent with the judgment on the merits for Travelers, the issue is not properly before us. Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co., 978 F.2d 430, 433 (8th Cir. 1992). Potashnick may seek to have the default judgment set aside, but Travelers need not do so. The district court correctly held that Travelers is not liable under its

-10-

bond or the contract, and it may not later be indirectly held liable for the same acts because of a default judgment entered against its co-defendant.  Id.

## C.

We review a district court's denial of attorneys' fees for abuse of discretion. Am. Travelers Life Ins. Co. v. AIG Life Ins. Co., 354 F.3d 756, 760 (8th Cir. 2004). The applicable Arkansas statute states that a prevailing party in a contract suit "may be allowed a reasonable attorney's fee to be assessed by the court."  Ark. Code. Ann. § 16-22-308 (2003).  Under the statute, no award of fees is mandatory, and the trial court, presumably better acquainted with the circumstances of the proceedings, has discretion whether to award fees and in what amount.  Jones v. Abraham, 999 S.W.2d 698, 705-06 (Ark. Ct. App. 1999).  In this case, no facts lead us to conclude that the district court abused its discretion.  Travelers has merely asserted that it is entitled to attorneys' fees because it prevailed and because it believed that Iafrate should never have brought the lawsuit, an opinion held by most prevailing parties.

The judgment is affirmed.

_____