J. Michael STOLTZ, as Special Administrator
of the Estate of James Patrick Stoltz, Deceased *v.*
Nancy Elizabeth FRIDAY, et al.

94-1235                                             926 S.W.2d 438

Supreme Court of Arkansas
Opinion delivered July 15, 1996
[Petition for rehearing denied September 9, 1996.*]

---

*Special Chief Justice Henry Wilkinson and Special Justices John Elrod, Sidney McCol-
lum, and Henry Wilson join. Jesson, C.J., and Dudley, Glaze, Corbin, and Brown, JJ., not
participating.

*Davidson Law Firm, Ltd.*, by: *Charles Darwin Davidson* and *Charles Phillip Boyd, Jr.*, for appellant.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Mike Huckabay* and *Beverly A. Rowlett*, for appellees.

ANDREE LAYTON ROAF, Justice. The appellant, J. Michael Stoltz, as special administrator, sued the appellees, Friday, Eldredge, & Clark, certain of its partners, and First Commercial Bank, for

negligence and breach of fiduciary duty in connection with the probate of the estate of James Patrick Stoltz. The Friday firm provided legal services in connection with the probate of the estate; the bank was designated trustee of a trust created under the will of the decedent. The trial court entered summary judgment in favor of Friday, Eldredge, & Clark and the individual attorneys and granted First Commercial Bank's motion to dismiss. In this appeal, the special administrator contends that the trial court erred in granting the motions for summary judgment and dismissal and in granting the Friday firm's motion to strike an amended complaint. We find no error and affirm.

J.P. Stoltz (Stoltz) died on December 18, 1977, at the age of 53. His will was prepared by the Friday firm and was executed on May 9, 1977. Stoltz's heirs were his wife, Judy, whom he married in 1974 after the execution of an antenuptial agreement prepared by the Friday firm, nine children from a previous marriage, and two sisters and their husbands. J. Stephen Stoltz (Stephen), the oldest son, was named executor in the will.

The primary asset of the estate was Polyvend, Inc., a metal-stamping company established by Stoltz. Additionally, in 1976, Stoltz had obtained two life insurance policies with a face value of $2,000,000 from First Pyramid Life Insurance Company (First Pyramid). Stoltz's will provided that after certain specific bequests, the majority of his estate would be placed in two trusts. The stock of Polyvend was to be placed in a "stock trust" of which Stephen was the sole beneficiary and trustee. The corpus of this trust, Polyvend, was to be distributed to Stephen if he was successful in operating the company for ten years. The remaining estate assets were to be placed in a "residuary trust" for the benefit of the other eight Stoltz children and other named trust beneficiaries. The residuary trust would also receive one half of the proceeds from any sale of Polyvend if it were sold within ten years of the establishment of the stock trust. The will named First Commercial Bank (First Commercial) as trustee of the residuary trust.

Stoltz's will was filed for probate on January 4, 1978. Stephen was appointed as executor, and the Friday firm served as his attorneys. Stephen applied for and received the $2,000,000 in life insurance proceeds in his individual capacity on January 19, 1978.

In 1987, certain of the residuary trust beneficiaries, including

J. Michael Stoltz (Michael), became concerned about the lack of progress being made in the probate of the estate and the fact that no distributions had been made to them in nearly ten years. They hired an attorney who filed a petition in September 1987 seeking to remove Stephen as executor of the estate. In connection with the prosecution of this petition, the heirs obtained copies of the estate files being maintained by the Friday firm and discovered, among other matters, that the estate had a potential claim to the life insurance proceeds paid in 1978 to Stephen and that the Friday firm had advised Stephen upon his appointment in January 1978 about potential conflicts of interest involved in his service as executor of the estate. In June 1988, the Friday firm was replaced as attorneys for the estate; however, Stephen continued to serve as executor.

A number of lawsuits have been filed in connection with the handling of this estate. Three are relevant to this appeal. In October 1988, six of the residuary trust beneficiaries, including Michael, filed suit in Faulkner County Chancery Court against Stephen, alleging that he breached his fiduciary duty to them while serving as executor of the estate and acting as trustee of the residuary trust created for their benefit. That action was concluded in June 1993 with the execution of a settlement agreement which released Stephen from liability both individually and as executor of the estate. On April 20, 1989, some of the same residuary trust beneficiaries filed suit in Pulaski County Circuit Court against First Pyramid for negligence, breach of contract, bad faith, and fraudulent conceal-ment in connection with the payment of the $2,000,000 in insur-ance benefits to Stephen, rather than to the estate. Michael was appointed special administrator on January 30, 1990, for the limited purpose of pursuing this action against First Pyramid, and he was substituted as plaintiff. The jury award to the special administrator of $3,666,666 was reversed on appeal, based on the running of the statute of limitations on an action to recover on a life insurance policy. *First Pyramid Life Ins. Co. v. Stoltz*, 311 Ark. 313, 843 S.W.2d 842, cert. denied, 114 S. Ct. 290 (1992). While the case against First Pyramid was pending, the Friday firm attorneys agreed to allow the statute of limitations to be tolled against them as of January 9, 1990, in a tolling agreement signed on behalf of Michael, both individually and as special administrator, and other of the trust beneficiaries.

On May 3, 1993, Michael, as special administrator, filed the

action against the Friday firm which gives rise to the present appeal. His complaint asserted that the Friday firm and certain of its partners served as attorneys for the estate until June 30, 1988, and that they breached their fiduciary obligation to the estate, the heirs, and the trustees of the trusts created by the will of the deceased when they jointly represented entities with conflicting interests for a period of approximately ten years. These entities included Stephen, both in his individual capacity and as executor of the estate; First National Bank of Little Rock, both as the largest creditor of the estate and as the trustee of a trust created by the will of the decedent; First Pyramid; Polyvend Corporation, the largest asset of the estate; and Diversified Financial Services, Inc., the insurance agency which sold the First Pyramid life insurance policies to Stoltz.

The special administrator further contended that the estate suffered damages and loss of assets as a result of the undisclosed conflicts and the actions of the Friday firm, including: (a) the wrongful payment of $2,000,000 in life insurance proceeds to Stephen, (b) an over payment to the surviving spouse, despite a binding antenuptial agreement drafted by the Friday firm to prevent Stephen's removal as executor, (c) the making of personal loans to pay the estate's debts by heirs of the estate in order to avoid an otherwise necessary sale of Polyvend, which would have benefited the residuary trust heirs, (d) transactions which avoided funding the stock trust as directed by the will, but which artificially commenced the running of the ten-year term of the stock trust to the benefit of Stephen, (e) repayment of voluntary personal loans to the executor with virtually all of the residuary assets of the estate, and (f) the transferring of assets other than Polyvend stock to the stock trust.

The Friday firm defendants filed a motion for summary judgment, asserting that: (a) the plaintiff had no cause of action against the defendants because of the absence of contractual privity, (b) the release of Stephen, individually and as executor of the estate, in connection with the Faulkner County Chancery Court action constituted a release of the defendants, (c) the plaintiff's action was barred by the statute of limitations, and (d) the plaintiff's action was barred because he failed to file suit on or before May 1, 1993, the date specified in the tolling agreement.

First Commercial was added as a defendant by an amended complaint filed on December 29, 1993. First Commercial filed a

motion to dismiss and asserted that any claim against it was barred by the statute of limitations. The bank also contended that the special administrator lacked standing to bring an action against it because the estate was not a beneficiary of the residuary trust.

In granting the Friday firm's motion for summary judgment, the trial court found that: (1) no privity existed between the plaintiff and the defendants justifying a claim of breach of duty, the defendants, as attorneys for the estate, owed no fiduciary duty to the heirs and beneficiaries in the absence of fraud and misrepresentation, and no allegations of fraud on the part of the defendants had been made; (2) the release of Stephen in the Faulkner County lawsuit filed by the individual trust beneficiaries also specifically released his agents and employees and therefore served as a release of the Friday firm as his attorneys; and (3) the statute of limitations barred the action.

The trial court granted First Commercial's motion to dismiss, finding that the bank had repudiated the trust, and that, in any event, the statute of limitations had also run on the plaintiff's complaint against the bank.

Before we consider the merits of Michael's arguments, we first note that in reaching its decision, the trial court seemed to confuse the fact that the special administrator of the estate filed this action, not the individual heirs and trust beneficiaries. There is only one plaintiff in this case, as pointed out to the trial court by the special administrator in a motion for reconsideration. That plaintiff is J. Michael Stoltz, as special administrator of the estate. The residuary trust beneficiaries are not parties to this action. The personal representative, in his complaint, prayed for damages which *he* suffered. Consequently, we do not consider the allegations concerning damages suffered by trust beneficiaries or heirs of the estate to be relevant, or to provide a basis for preventing summary judgment. Only two of the plaintiff's allegations pertain to the harm suffered by the estate and not the individual beneficiaries — the loss to the estate of the $2,000,000 in insurance benefits and the overpayment to the surviving spouse. The estate has not been damaged by the actions which in effect resulted in estate assets being placed in one trust rather than the other.

## 1. Summary judgment

The standard for review of a summary judgment is

whether the evidentiary items presented by the moving party in support of the motion left a question of material fact unanswered and, if not, whether the moving party is entitled to judgment as a matter of law. *National Bank of Commerce* v. *Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996). We view all proof in the light most favorable to the party opposing the motion, resolving all doubts and inferences against the moving party. *Id*. In this case, even assuming the facts alleged in the complaint are true, the Friday firm is entitled to summary judgment as a matter of law on all of the claims properly advanced by Michael as special administrator of the estate.

■ We agree that the statute of limitations bars the action against the Friday firm and its attorneys. The applicable statute of limitations for legal malpractice is the three-year period provided in Ark. Code Ann. § 16-56-105 (1987). *Wright* v. *Compton, Prewett, Thomas & Hickey*, 315 Ark. 213, 866 S.W.2d 387 (1993). Further, the statute of limitations for fraud and breach of fiduciary duty actions is also three years. *Alexander* v. *Flake*, 322 Ark. 239, 910 S.W.2d 190 (1995); Ark. Code Ann. § 16-56-105 (1987). In *Chapman* v. *Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991), this court stated that it has been the rule since 1877 that the statute of limitations applicable to malpractice actions begins to run, in the absence of concealment of the wrong, when the negligence occurs, and not when it is discovered. *See also Ford's Inc.* v. *Russell Brown & Co.*, 299 Ark. 426, 773 S.W.2d 90 (1989). In *Chapman*, we noted that one "current trend" in such actions is the "termination of employment" rule, which provides that the statute of limitations does not begin to run until the attorney-client, doctor-patient, or other professional-client relationship has ended. However, we concluded that our traditional rule has a countervailing fairness about it, and elected to maintain it.

In his letter opinion, the trial court found that the statute of limitations had run for three reasons. He first concluded that Michael signed the tolling agreements prior to his appointment in 1993 as special administrator for the purpose of suing the Friday firm, and the agreement was therefore of no effect. The trial court further found that because the attorney who primarily dealt with the estate withdrew from the Friday firm before the signing of the last tolling agreement, the agreement was not effective as to him, and that any derivative action against the other members of the firm would also be barred. The trial court finally concluded that the

action was barred by the general running of the statute because only one of the acts complained of by the plaintiff occurred within three years of the effective date of the tolling agreements, and this act, a transfer of assets to the stock trust in February 1988, occurred at a time that the plaintiff was represented by counsel. He concluded that any fiduciary duty owed by the Friday firm terminated when the plaintiff employed counsel.

Michael argues that the action is not barred by the statue of limitations for several reasons. He contends that the Friday firm is estopped from asserting the limitations as a defense because of their fiduciary obligations to the estate beneficiaries. He further asserts that the last element essential to his cause of action did not occur until either the discharge of the Friday firm in June 1988 or until the estate was later closed and the executor discharged, and his action would be timely under either alternative. He analogizes the Friday firm's continued representation of the estate and its alleged repetitive tortious conduct to the "continuous treatment" doctrine of medical negligence cases. He finally contends that the limitations period as to the life insurance proceeds was tolled while the verdict in the action against First Pyramid was on appeal to the Supreme Court.

We do not agree that we should depart from the holding of *Chapman* and its predecessors simply because the acts complained of by Michael occurred during the probate of an estate. The probate of an estate can last for a number of years. Here, the acts complained of concern very separate and distinct transactions which occurred over the course of ten years. We can readily distinguish the probate of an estate from the holding in *Wright v. Compton, Prewett, Thomas & Hickey*, 315 Ark. 213, 866 S.W.2d 387 (1993), where we determined that the statute of limitations did not commence until the date of the last act performed by an attorney in a business reorganization which took several months to complete. In *Wright*, we said that to require a plaintiff to bring suit against an attorney before a lengthy transaction is completed could deny the attorney the chance to effectuate the proper result. Clearly, the probate of an estate does not involve a single transaction. Based on our holding in *Chapman*, even if the tolling agreements are effective, the general statute of limitations has run as to all claims asserted by Michael except one. The trial court found, and it is undisputed, that the transfer of Stocco stock to the stock trust in February 1988 was the

only alleged negligent act occurring within three years of January 9, 1990, the effective date of the first tolling agreement. Michael does not contest this finding; he in essence argues against the application of our traditional limitations rule and asks that we adopt an alternative to the traditional rule; we decline to do so.

The insurance proceeds were paid to Stephen in January of 1978. The settlement with the widow of Stoltz was entered into in September 1978. All other acts Michael complains of except the transfer of Stocco stock occurred prior to January 9, 1987. The three-year statute of limitations had thus run as to all of these claims before the effective date of the tolling agreements.

As to the transfer of the Stocco stock from the estate to the stock trust, the trial court determined that this occurred within three years of the first tolling agreement. However, he determined that the statute of limitations had run on this claim because the tolling agreements were of no effect; he also concluded that the Friday firm had no duty to beneficiaries of the estate.

■ The substance of this claim is as follows. Michael asserts that a substantial portion of Polyvend stock was placed in Stocco, Inc., a company created for the purpose of holding the Polyvend stock. He contends that the Polyvend stock was pledged as collateral for a $1.5 million debt owed to First Commercial and that the transfer of Polyvend stock to the holding company allowed the estate to appear solvent and thus facilitated the transfer of Polyvend to the stock trust, to the benefit of Stephen, prior to closing of the estate. Michael asserts in his complaint that the transfer of Stocco stock to the stock trust occurred after the petition to remove Stephen as executor had been filed and without notice to either the probate court or the trust beneficiaries. Again, Michael Stoltz represents only the estate, not the heirs or trust beneficiaries. He has not demonstrated any injury to the estate resulting from the transfer of Polyvend (Stocco) stock to the stock trust. The dispute over the running of the statute of limitations is thus irrelevant with respect to this claim.

Because we determine that the trial court was correct in holding that the statute of limitations barred the action against the defendants, we do not reach the issues raised by Michael regarding privity and the duty owed by the attorneys for the executor to the estate and its beneficiaries, or regarding the effectiveness of the

tolling agreements and the release of Stephen executed by the individual trust beneficiaries.

## 2. Amended Complaint

Michael also contends that the trial court erred by granting the Friday firm's motion to strike the amended complaint filed on February 25, 1994. On February 15, 1994, the trial court entered an order directing that the plaintiff file a more definite and certain amended complaint and directing that the complaint specifically set out the acts or omissions of certain defendants. On February 25, 1994, the plaintiff filed an amended complaint in response to this order. Subsequently, the defendants, other than First National Bank, moved to strike the complaint.

The defendants asserted that the amended complaint went beyond the trial court's order and should be stricken, because it attempted to change the plaintiff's theory of recovery to the prejudice of the defendants in view of the pending motion for summary judgment. They contended that the plaintiff's original complaint did not sufficiently plead fraud and that the word fraud was used for the first time in this amended complaint. The trial court granted the motion, noting that in view of its order granting summary judgment, its order directing the plaintiff to file a more definite complaint was withdrawn.

Michael submits on appeal that a party may amend its pleading at any time. Ark. R. Civ. P. 15(a). Rule of Civil Procedure 15(a) provides in part:

> With the exception of pleading the defenses mentioned in Rule 12(h)(1), a party may amend his pleadings at any time without leave of the court. Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding.

Michael does not argue that the trial court abused its discretion in striking the amended complaint; his argument simply ignores all but the first sentence of the rule. However, Rule 15(a) clearly contemplates that the opposing party may object and the court may strike the amended pleading. Further, the trial court is vested with broad

discretion in allowing or denying amendments to pleadings. *Cawood v. Smith*, 310 Ark. 619, 839 S.W.2d 208 (1992). Here, the amendment was filed nearly one year after the original complaint was filed, and it was filed while the Friday firm's motion for summary judgment was pending. The trial court's ruling on the motion for summary judgment would also be dispositive of the claims asserted in the amended complaint, and we cannot say that the trial court abused its discretion in striking this pleading.

### 3. Motion to dismiss

For his final point, Michael argues that the trial court erred in granting the motion to dismiss filed by First Commercial. The trial court stated in a letter opinion that the motion was granted because the trust had been repudiated and, in any event, the statute of limitations had run on the plaintiff's complaint.

On appeal, Michael contends that a bank officer stated in a deposition that the bank occupied a trustee relationship with the Stoltz children in January 1990. He also asserts that as special administrator, he had standing to pursue this cause of action against the bank on behalf of the trust beneficiaries. However, he does not explain how being in a fiduciary relationship with beneficiaries in another trust affects the bank's repudiation.

In a separate declaratory-judgment action regarding the administration of the estate, First Commercial was named a defendant. The beneficiaries of the trust in question were either plaintiffs or defendants in that case. In its answer served in October 1988, First Commercial stated that it was named as trustee of the residuary trust, but that it had never been contacted to serve in such capacity. First Commercial stated that it had never accepted the role of trustee and would decline to serve if so requested. Michael simply does not dispute that the beneficiaries had notice of the bank's repudiation of the trust. First Commercial was sued more than five years after the October 1988 answer, by amended complaint filed on December 29, 1993. Further, Michael and other trust beneficiaries asserted that Stephen, rather than First Commercial, had acted as trustee of the residuary trust in the action they filed against Stephen in Faulkner County Chancery Court in October 1988. Clearly, the statute of limitations has run as to any action against First Commercial in this instance.

Moreover, we again note that the trust beneficiaries are

not parties to this action, and the estate was in no way damaged by the inaction of the bank. Only the individual beneficiaries of the trust could claim damages resulting from the mismanagement of trust funds or the breach of the trustee's fiduciary duty.

Affirmed.

Special Chief Justice HENRY WILKINSON and Special Justices JOHN ELROD, SIDNEY MCCOLLUM, and HENRY WILSON join in this opinion.

JESSON, C.J., DUDLEY, GLAZE, CORBIN, and BROWN, JJ. not participating.