Ron and Ramona DAVENPORT, as the Administrators of the Estate of Linda Kay Moore, *Deceased*, or, in the Alternative, Ron and Ramona Davenport, Individually and as the Heirs at Law of Linda Kay Moore, *Deceased*, on Behalf of Themselves and All Other Heirs at Law of the Deceased, or All Who are Entitled to Legal Redress for the Death of Linda Kay Moore, *Deceased v.* Tyrone LEE, M.D.; Conway Regional Medical Center; Craig Cummins, M.D.; and James Throneberry, M.D.

01-456 72 S.W.3d 85

Supreme Court of Arkansas
Opinion delivered April 11, 2002

*Charles Phillip Boyd, Jr.*, and *Christopher D. Anderson*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *Patricia Sievers Harris* and *Jane Weisenfels Duke*; *Anderson, Murphy & Hopkins, LLP*, by: *Overton S. Anderson* and *Scott D. Provencher*; and *Armstrong Allen, PLLC*, by: *Ken Cook* and *Jeffrey L. Singleton*, for appellees.

DONALD L. CORBIN, Justice. This appeal is before us on a petition for review from a decision by the Arkansas Court of Appeals concluding that a non–attorney personal representative is not authorized to file a *pro se* complaint in a wrongful-death action, but that such a defect did not render the complaint a nullity. *See Davenport v. Lee*, 73 Ark. App. 247, 40 S.W.3d 346 (2001). We granted the petition, pursuant to Ark. Sup. Ct. R. 1-2(e)(iii). We affirm the trial court's order.

This appeal stems from events surrounding the death of Linda Kay Moore. On February 11, 1997, Moore went to the emergency room at Conway Regional Medical Center ("CRMC") seeking treatment for pneumonia. She was admitted to the hospital and subsequently scheduled for surgery. On February 15, Moore was intubated by hospital staff in preparation for her surgery, but died minutes after the intubation. Surviving Moore were her sister, Appellant Ramona Davenport, and three adult children.

Following the death of Moore, the Faulkner County Probate Court appointed Ramona and her husband, Appellant Ron Davenport, as administrators of Moore's estate. On February 10, 1999, Appellants filed a *pro se* complaint for wrongful death alleging negligence on the part of Appellees Dr. Tyrone Lee, Conway Regional Medical Center, Dr. Craig Cummins, Dr. Greg Lewis,

and Dr. James Throneberry.[1] Thereafter, on May 28, 1999, the Boyd Law Firm filed an entry of appearance, as well as a pleading entitled "Addendum to Complaint." This addendum purported to change the case styling to reflect the addition of Dr. Throneberry's first name. It was the first pleading signed by an attorney in this action.

Dr. Cummins filed an answer denying Appellants' allegations and asserting that the complaint should be dismissed pursuant to Ark. R. Civ. P. 12(b)(6) and because the statute of limitations had run on the cause of action. Likewise, Dr. Throneberry denied all allegations and averred that the complaint should be dismissed because it was a nullity, as it had been signed by the estate's administrators who were non-lawyers and that any further claims were time barred. Dr. Lee and CRMC initially filed answers denying Appellants' allegations, but later filed amended answers also asserting the affirmative defense of limitations.

On June 21, 1999, Dr. Throneberry filed a motion to dismiss that was subsequently adopted by each of the other Appellees. In support of his motion, Dr. Throneberry argued that the filing of the complaint by non-lawyers resulted in a nullity, and thus, no valid complaint was filed prior to the expiration of the two-year statute of limitations under the Arkansas Medical Malpractice Act. Appellants responded that as administrators they were authorized to file a complaint on behalf of Moore's estate. Moreover, they argued that under Ark. R. Civ. P. 17, they were allowed to cure any defect in the original complaint through inclusion or ratification by the real party in interest.

Following a hearing on Appellees' motions, the trial court determined that Appellants, as administrators of the estate, could not file a valid complaint for wrongful death where neither of them was an attorney. The trial court also determined that Appellants were not acting on their own behalf, but rather, as representatives of all the statutory beneficiaries. Finally, the trial court ruled that subsequent pleadings filed by attorneys could not relate

---

[1] Pursuant to Ark. R. Civ. P. 41(a), the trial court granted Appellants' motion to dismiss without prejudice their claim against Dr. Lewis on June 23, 1999.

back to the original complaint under the circumstances in the present case. On November 24, 1999, the trial court entered an order dismissing with prejudice Appellants' cause of action.

At the conclusion of the hearing on November 3, 1999, Appellants requested time to file a motion for reconsideration. Several letters followed, each requesting additional time to file the motion. The motion and supporting brief were not filed, however, until November 26, 1999. Therein, Appellants argued that Appellees had not suffered any surprise or prejudice by the filing of the original complaint and that Appellants were actually represented by counsel at the time the case commenced. According to Appellants, the case commenced when the summons and complaint were served upon Appellees. On November 17, 1999, prior to the filing of the motion for reconsideration, Appellants also filed a fifth amended complaint, alleging for the first time that CRMC had fraudulently concealed part of Moore's medical records. Appellees moved to strike the amended complaint arguing that the trial court correctly ruled that Appellants were prohibited from amending the original complaint. The trial court subsequently entered orders granting Appellees' motions to strike and denying Appellants' motion for reconsideration.

Appellants filed a timely notice of appeal, alleging seven points of error. The court of appeals determined that Appellants, as administrators, were not authorized to file a complaint on behalf of the statutory beneficiaries. According to the court of appeals, however, such an irregularity amounted to an amendable defect, not a nullity. Appellees then petitioned this court for review. When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed in this court. *See Regions Bank & Trust v. Stone County Skilled Nursing Facil., Inc.*, 345 Ark. 555, 49 S.W.3d 107 (2001); *Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001). Thus, we review the trial court's judgment, not that of the court of appeals.

In reviewing a trial court's decision on a motion to dismiss, this court must treat the facts alleged in the complaint as true and view them in a light most favorable to the plaintiff. *Goff v.*

*Harold Ives Trucking Co., Inc.*, 342 Ark. 143, 27 S.W.3d 387 (2000); *Arkansas Tech Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000). In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *Id.* With this standard in mind, we now turn to Appellants' arguments on appeal.

## I. No Waiver of Limitations Defense

As an initial matter, Appellants argue that the trial court erred in refusing to deny the motions to dismiss filed by Drs. Cummins and Lee and CRMC. Appellants base this argument on the contention that those parties waived their right to assert the defense of limitations when they failed to raise it in their initial responsive pleadings. We disagree.

Arkansas has long recognized the common-defense doctrine, holding that the answer of one defendant inures to the benefit of the other co-defendants. *See Sutter v. Payne*, 337 Ark. 330, 989 S.W.2d 887 (1999); *Richardson v. Rodgers*, 334 Ark. 606, 976 S.W.2d 941 (1998); *Arnold Fireworks Display, Inc. v. Schmidt*, 307 Ark. 316, 820 S.W.2d 444 (1991); *Bruton v. Gregory*, 8 Ark. 177 (1847). In determining whether the common-defense doctrine is applicable, this court focuses on whether the answer of the non-defaulting defendant states a defense that is common to both defendants, because then "a successful plea . . . operates as a discharge to all the defendants, but it is otherwise where the plea goes to the personal discharge of the party interposing it." *Richardson*, 334 Ark. at 612, 976 S.W.2d at 944-45 *(quoting Southland Mobile Home Corp. v. Winders*, 262 Ark. 693, 694, 561 S.W.2d 280, 280-81 (1978)). In other words, the doctrine is applicable where the asserted defense would discharge all of the defendants.

Here, the affirmative defense at issue is the running of the statute of limitations. Each of the claims raised against Appellees is subject to the two-year statute of limitations set forth in the Arkansas Medical Malpractice Act. Thus, the defense of one Appellee that Appellants failed to timely file their action is common to the remaining Appellees and would serve to discharge

each of them from this action. Accordingly, Dr. Throneberry's answer inured to the benefit of the other Appellees, thus preserving their rights to assert the defense of limitations.

## *II. Complaint was a Nullity*

We next turn to Appellants' argument that the trial court erred in ruling that their original complaint was a nullity. According to Appellants, the absence of counsel is a procedural defect that does not interfere with the subject-matter jurisdiction of the trial court, and thus, the complaint is simply defective, not void *ab initio*. Appellees counter that the filing of a *pro se* complaint on behalf of statutory beneficiaries constituted the unauthorized practice of law, and thus, rendered the complaint a nullity. Appellees further argue that because there was no valid complaint filed prior to the expiration of the two-year limitations period, Appellants were time-barred from bringing suit against them. We agree with Appellees.

### *a. Commencement of the Action*

Before discussing the issue of the unauthorized practice of law, we must first address some separate issues raised by Appellants that are directly related to the question of whether the *pro se* complaint was a nullity. First, Appellants contend that they were represented by counsel at the time this action commenced, and therefore, there is no basis for declaring the complaint a nullity. Appellants' base this contention on the theory that an action does not commence until service of process is completed under Ark. R. Civ. P. 4(i). According to Appellants, because service was completed after counsel entered an appearance, Appellants were not acting *pro se*. This argument is without merit.

Appellants offer no authority in support of this argument, and in fact, acknowledge that Ark. R. Civ. P. 3 specifically provides that an action commences with the filing of a complaint with the court clerk. This court has explained that the touchstone for a limitations defense is when the cause of action was commenced. *Sublett v. Hipps*, 330 Ark. 58, 952 S.W.2d 140 (1997); *Green v. Wiggins*, 304 Ark. 484, 803 S.W.2d 536 (1991).

While it is true that the effectiveness of the commencement of an action is dependent on the plaintiff completing service of process as provided for in Rule 4(i), for purposes of tolling the statute of limitations, this court looks to the time that the complaint was filed. *Id.* Therefore, the filing of the complaint commenced this action, and the fact that Appellants were represented by counsel at the time service was completed does not toll the statute of limitations. Instead, we must focus on whether Appellants were represented by counsel at the time the complaint was filed.

■ Under Ark. R. Civ. P. 11(a), "[a] party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address and telephone number, if any." In addition, Ark. R. Civ. P. 64(a), provides that, when additional counsel is employed to represent any party in a case, that counsel shall immediately cause the clerk to enter his name as attorney of record in the case and then shall notify the court and opposing counsel that he has been employed. Here, the lack of any signature by an attorney on the complaint is indicative of Appellants' *pro se* status at the time this action commenced. Moreover, the fact that an attorney did not file an entry of appearance in this matter until May 28, over three months after the filing of the complaint, is further proof that Appellants were not represented by counsel. We are mindful that counsel for Appellants now argues that his firm represented Appellants at the time the complaint was filed, but did not sign the complaint due to an inability to verify the allegations set forth in the pleading. If we accepted this argument, we would in effect be condoning counsel's attempt to circumvent the rules of civil procedure, and we will not do so.

### b. Role of Administrators

■ ■ Next, Appellants contend that they were authorized to proceed *pro se* because as administrators of Moore's estate they were vested with broad powers to manage a wrongful-death claim on behalf of the decedent. This argument is entirely contrary to this court's established law regarding the role of administrators. An administrator acting on behalf of an estate does so in a fiduciary capacity. *Arkansas Bar Ass'n v. Union Nat'l Bank*, 224 Ark. 48, 273 S.W.2d 408 (1954). At issue in that case was

whether a bank acting as the personal representative of an estate had engaged in the unauthorized practice of law. This court concluded that "a person who is not a licensed attorney and who is acting as an administrator, executor or guardian cannot practice law in matters relating to his trusteeship on the theory that he is practicing for himself." *Id.* at 51-52, 273 S.W.2d at 410. In reaching this conclusion, the court noted that a trustee or personal representative is not acting for himself and in connection with his own affairs, but to the contrary is acting for others who would ordinarily be the beneficiaries.

This court further discussed the nature of the administrator's role in *Brewer v. Lacefield*, 301 Ark. 358, 784 S.W.2d 156 (1990), and stated that an administrator acts only as a "trustee of conduit." *Id.* at 362, 784 S.W.2d at 158 (citing *Dukes v. Dukes*, 233 Ark. 850, 853, 349 S.W.2d 339, 341 (1961); Ark. Code Ann. § 16-62-102(f) (1987)). This court further explained that proceeds from a wrongful-death action are for the sole benefit of the statutory beneficiaries and are held in trust by the administrator "for the benefit of the widow and next of kin." *Douglas v. Holbert*, 335 Ark. 305, 314, 983 S.W.2d 392, 396 (1998); *see also Brewer*, 301 Ark. 358, 784 S.W.2d 156. Thus, Appellants as the administrators of Moore's estate were acting on behalf of all the heirs at law when they filed this wrongful-death action. Their attempts to distinguish the above-cited cases on the grounds that no proceeds have yet been awarded are meritless.

### c. Rights of Individual Heirs

Appellants also argue that it was error for the trial court to dismiss the complaint because Ramona filed suit in both her capacity as an administrator and as an individual heir at law. This argument fails for two reasons. First, this court has held that an individual may not file suit where a personal representative has been appointed. Pursuant to Ark. Code Ann. § 16-62-102(b) (1987), every wrongful-death action must be brought by and in the name of the personal representative. *See also Brewer*, 301 Ark. 358, 784 S.W.2d 156. The wrongful-death code does not create an individual right in any beneficiary to bring suit. *Id.* (citing *Cude v. Cude*, 286 Ark. 383, 691 S.W.2d 866 (1985)).

Moreover, where no personal representative has been appointed, a wrongful-death suit must be filed with all of the statutory beneficiaries joined as parties to a suit. *Ramirez v. White Cty. Cir. Ct.*, 343 Ark. 372, 38 S.W.3d 298 (2001); *Thompson v. Southern Lbr. Co.*, 113 Ark. 380, 168 S.W. 1068 (1914). This rule dates back to this court's decision in *McBride v. Berman*, 79 Ark. 62, 94 S.W. 913 (1906). There, the court stated, "[t]hat in default of a personal representative an action brought under Lord Campbell's Act must make the widow (if there be one) and the heirs at law parties thereto." *Id.* at 65, 94 S.W. at 914.

Like the appellant in *Ramirez*, Appellants here argue that under this court's decision in *Murrell v. Springdale Mem. Hosp.*, 330 Ark. 121, 952 S.W.2d 153 (1997), an individual heir at law may bring suit for wrongful death even when there are other heirs at law. In *Murrell*, the widower filed suit as the surviving spouse and subsequently took a voluntary nonsuit. There were also three surviving children. The widower refiled the lawsuit as the personal representative of the estate and as the surviving spouse. The widower died and the couple's son was appointed successor administrator. This court held that the widower's action for wrongful death of his wife did not survive his death, and that the children's claims were barred by the statute of limitation because they were not parties to the first action. In reaching this conclusion, however, we erroneously stated that a complaint filed by an individual heir "was appropriately brought according to Ark. Code Ann. § 16-62-102(b)." *Id.* at 124, 952 S.W.2d at 155. We clarified this statement in *Ramirez*, 343 Ark. 372, 38 S.W.3d 298, expressly holding that where there is no personal representative, any action for wrongful death shall be brought by all the heirs at law of the deceased. Accordingly, Ramona would have no standing to bring an individual claim for the wrongful death of Moore. In sum, any argument that Appellants were authorized to pursue a wrongful-death action *pro se* is without merit. Thus, we must next determine whether the filing of the *pro se* complaint constituted the unauthorized practice of law.

### d. Unauthorized Practice of Law

The issue of what constitutes the unauthorized practice of law was thoroughly discussed by this court in *Arkansas Bar Ass'n*, 224 Ark. 48, 273 S.W.2d 408. There, this court stated:

> It has been said in many opinions that it is not possible to give a definition of what constitutes practicing law that is satisfactory and all inclusive, and we make no such attempt. We do hold however that when one appears before a court of record for the purpose of transacting business with the court in connection with any pending litigation or when any person seeks to invoke the processes of the court in any matter pending before it, that person is engaging in the practice of law. To us this conclusion is obvious. Courts are constituted for the purpose of interpreting and administering the laws passed by the law making body and the rules announced by the judiciary, and they must necessarily be governed in their operation by rules of procedure. Attorneys are officers of the court and are able by special training and practice to know the law and rules of procedure, and are thereby in position to render a service to the court. Therefore anyone who assumes the role of assisting the court in its process or invokes the use of its mechanism is considered to be engaged in the practice of law.

*Id.* at 53, 273 S.W.2d at 411. Thus, the issue turns on a determination of whether Appellants attempted to transact business with or invoke the processes of the court.

In *Arkansas Bar Ass'n*, this court specifically prohibited the bank, either in its individual or fiduciary capacity, from preparing motions, pleadings, or other documents to be filed in the courts on behalf of any beneficiaries. Similarly, this court held that the filing of motions constituted the unauthorized practice of law. *See Abel v. Kowalski*, 323 Ark. 201, 913 S.W.2d 788 (1996). Accordingly, Appellants filing with the court a complaint constituted the unauthorized practice of law.

Finally, we are unpersuaded by Appellants' attempts to distinguish the present case from *Arkansas Bar Ass'n* and its progeny. Appellants contend that those cases are inapplicable because they involved the unauthorized actions of banks or corporations that are specifically prohibited by statute from engaging in the practice

of law. The crux of our prior decisions, however, is that administrators or other fiduciaries cannot proceed *pro se* in their representative capacity. Accordingly, our prior decisions are squarely on point with the present situation.

 Having determined that Appellants engaged in the unauthorized practice of law, this court must next decide whether such action renders their original complaint a nullity. It is axiomatic that it is illegal to practice law in Arkansas without a license. *See* Ark. Code Ann. § 16-22-206 (1987); *All City Glass & Mirror, Inc. v. McGraw Hill Info. Sys. Co.*, 295 Ark. 520, 750 S.W.2d 395 (1988). In discussing the appropriate remedy for such illegal practice, this court has stated:

> It is widely held in other jurisdictions that proceedings in a suit instituted or conducted by one not entitled to practice are a nullity, and if appropriate steps are timely taken the suit may be dismissed, a judgment in the cause reversed, or the steps of the unauthorized practitioner disregarded.

*McKenzie v. Burris*, 255 Ark. 330, 333, 500 S.W.2d 357, 359-60 (1973). This court further stated that appropriate steps for dealing with the unauthorized practice of law included: a motion to strike a complaint; a motion to strike an answer; a motion for mistrial; or a motion to strike a petition. *Id.*

Moreover, this court has denied a motion for a writ of certiorari filed on behalf of a corporation by a non-attorney. *McAdams v. Pulaski Cty. Cir. Ct.*, 330 Ark. 848, 956 S.W.2d 869 (1997). This court has also affirmed a trial court's order striking an answer filed by a corporation's president, who was not a licensed attorney. *All City Glass*, 295 Ark. 520, 750 S.W.2d 395. Finally, in *Abel*, 323 Ark. 201, 913 S.W.2d 788, this court ruled that a person not licensed to practice law in this state could not represent another and ordered the court of appeals to strike any motions filed by the non-attorney on remand. Since this court's decision in *McKenzie*, however, there have been no cases where this court has specifically held an action to be a nullity because it constituted the unauthorized practice of law.

A review of other jurisdictions faced with similar issues reveals that there is a split of authority as to whether the unautho-

rized practice of law renders a proceeding a nullity or merely amounts to an amendable defect. Generally, those jurisdictions holding that the unauthorized practice of law results in a nullity have done so after concluding that the proscription on the unauthorized practice of law is of paramount importance in that it protects the public from those not trained or licensed in the law. *See Ghafary v. Korn,* 738 So. 2d 778 (Ala. 1998) (holding that an attempt by a non-attorney executrix, acting *pro se,* to represent the interest of an estate in a wrongful-death action constituted the unauthorized practice of law, and as such, the *pro se* complaint was a nullity); *Black v. Baptist Medical Ctr.,* 575 So. 2d 1087 (Ala. 1991) (holding that the filing of complaint by person not admitted to practice law in Alabama was a fatal defect for purposes of the statute of limitations); *Ratcliffe v. Apantaku,* 318 Ill.App.3d 621, 742 N.E.2d 843 (2000) (holding that a non-attorney personal representative could not represent the legal interest of the decedent's estate in a *pro se* capacity in a wrongful-death action); *Waite v. Carpenter,* 1 Neb. Ct. App. 321, 496 N.W.2d 1 (1992) (holding that personal representative was acting in a representative capacity for the estate and could not proceed *pro se* in a wrongful-death action).

On the other hand, those jurisdictions holding that the unauthorized practice of law results in an amendable defect have done so in an attempt to avoid what they deem to be the unduly harsh result of dismissal on technical grounds. *See Mikesic v. Trinity Lutheran Hosp.,* 980 S.W.2d 68 (Mo. Ct. App. 1998) (holding that dismissal of claim not filed by proper person was unwarranted where the purpose of a statute of limitations is to assure fairness by prohibiting stale claims); *Richardson v. Dodson,* 832 S.W.2d 888 (Ky. 1992) (holding that *pro se* complaint filed by a decedent's son in his individual capacity was an amendable defect, as the purpose of statutes of limitation is served when notice of the litigation is given within the time period allowed).

 While we too disfavor dismissing actions on technical grounds, this court must remain cognizant of our duty to protect the interests of the public through the regulation of the practice of law. The power to regulate and define the practice of law is a prerogative of the judicial department as one of the divi-

sions of government. *See Wilson v. Neal,* 341 Ark. 282, 16 S.W.3d 228 (2000), *cert. denied,* 121 S. Ct. 1355 (2001); *Weems v. Supreme Ct. Comm. on Prof. Conduct,* 257 Ark. 673, 523 S.W.2d 900, *reh'g denied,* 257 Ark. 685-A, 523 S.W.2d 900 (1975). Amendment 28 to the Arkansas Constitution specifically details our duty in this regard and states: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." This court accepted the responsibility assigned to it by the constitution and set the standards high in order to protect the public, as well as the integrity of the legal profession. *Wilson,* 341 Ark. 282, 16 S.W.3d 228. In light of our duty to ensure that parties are represented by people knowledgeable and trained in the law, we cannot say that the unauthorized practice of law simply results in an amendable defect. Where a party not licensed to practice law in this state attempts to represent the interests of others by submitting himself or herself to jurisdiction of a court, those actions such as the filing of pleadings, are rendered a nullity.

Having determined that the original *pro se* complaint was a nullity, it is unnecessary for us to analyze Appellants' arguments that Ark. R. Civ. P. 15 or 17 should be applied to salvage their cause of action. These rules can not apply, because the original complaint, as a nullity never existed, and thus, an amended complaint cannot relate back to something that never existed, nor can a nonexistent complaint be corrected.

### III. Fraudulent Concealment

Finally, Appellants argue that the trial court erred in failing to find that the two-year statute of limitations period had been tolled by Appellees' actions of fraudulently concealing the decedent's medical records. Appellants aver that the affidavits submitted by them and the facts in this case should have prevented the trial court from granting a motion to dismiss. In other words, Appellants allege that there was a material question of fact at issue here. There is no merit to this argument.

Pursuant to Rule 15, a party may amend his pleadings at any time without leave of the court. The rule further provides:

> Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding.

Ark. R. Civ. P. 15(a). This court has held that a trial court is vested with broad discretion in allowing or denying amendment to pleadings. *Ultracuts, Ltd. v. Wal-Mart Stores, Inc.*, 343 Ark. 224, 33 S.W.3d 128 (2000); *Stoltz v. Friday*, 325 Ark. 399, 926 S.W.2d 438 (1996).

In *Stoltz*, the plaintiff filed an amended complaint that attempted to raise a new theory of recovery and defendants filed a motion to strike. The trial court granted the defendants' motion, and this court affirmed. There, the amendment was filed nearly one year after the original complaint was filed, and it was filed while the defendant's motion for summary judgment was pending. Under those facts, this court declined to hold that the trial court abused its discretion in striking this pleading.

*Stoltz* is analogous to the present situation. Here, Appellants did not raise the issue of fraudulent concealment until the filing of the fifth amended complaint, almost nine months after this action commenced. This amended complaint was also filed after the trial court orally granted Appellees' motions to dismiss, but then granted Appellants additional time to file a motion for reconsideration. Counsel for Appellants conceded in oral argument before this court that they were aware of the alleged concealment of records, but failed to raise it at an earlier time because it did not appear to be necessary to raise that issue. Under these facts, we cannot say that the trial court abused its discretion in striking the amended complaint.

In sum, the trial court's order dismissing this case was proper as Appellants failed to file a proper cause of action prior to the expiration of the two-year statute of limitations.

Circuit court affirmed; court of appeals reversed.

HOWARD W. BRILL, Spl. J., joins in this opinion.

IMBER, J., concurs.

GLAZE, J., not participating.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur with the result reached in this case because I agree that our regulatory duty under Amendment 28 to the Arkansas Constitution mandates our holding set forth in the majority opinion: "Where a party not licensed to practice law in this state attempts to represent the interests of others by submitting himself or herself to jurisdiction of a court, those actions such as the filings of pleadings, are rendered a nullity."

I write separately to voice the same concerns that I expressed in *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County*, 01-1311 (April 11, 2002) (IMBER, J., concurring). The federal appellate courts have construed Rules 15(c) and 17(a) of the Federal Rules of Civil Procedure to permit relation back of amendments to pleadings adding entirely new plaintiffs under circumstances that do not evince a tactical or strategic decision, but rather, an understandable and excusable mistake. *See Advanced Magnetics, Inc., v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997); *Scheufler v. General Host Corp.*, 126 F.3d 1261 (10th Cir. 1997); *Crowder v. Gordons Transports, Inc.*, 387 F.2d 413 (8th Cir. 1967).

The Arkansas survival wrongful-death statutes, respectively codified at Ark. Code Ann. §§ 16-42-101 and 16-42-102 (Supp. 2001), provide very clear and precise language delineating the proper party to bring suit. In the instant case, the attorney's instruction to his clients to file *pro se* and his failure to sign the pleading cannot be condoned as an understandable mistake. The appellants' conduct in this case was in fact a deliberate and tactical choice.