# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 29, 2010

No. 09-40011

Lyle W. Cayce
Clerk

ARKOMA BASIN PROJECT LIMITED PARTNERSHIP,

Plaintiff-Appellant,

v.

WEST FORK ENERGY COMPANY LLC; ARKANA OPERATING
COMPANY INC; JOE POE; JEFF SMYTH,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
USDC No. 4:07-CV-530

Before JONES, Chief Judge, and SMITH and ELROD, Circuit Judges.

PER CURIAM:[*]

Appellant Arkoma Basin Limited Partnership appeals from the trial court's grant of judgment as a matter of law to Appellees West Fork Energy Company LLC, Arkana Operating Company, Joe Poe, and Jeff Smyth on its breach-of-contract claim as well as its claims for violations of federal and state securities laws. Arkoma also appeals several of the trial court's evidentiary

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 09-40011

rulings, its conduct during trial, and the award of attorney's fees. For the following reasons, we AFFIRM.

## I.

Arkana owned several thousand acres of natural gas leases in Arkansas's Arkoma Basin. In 2002, Surge Petroleum, Arkana's owner, decided to sell the company. In order to promote the sale, Surge prepared a two-hundred-page report (the "Surge Report"). The Surge Report detailed Arkana's current holdings and included geological information, recommended development strategies, and projected production levels for several wells located on the prospect. In 2003, Fagadau Energy considered purchasing Arkana. As part of its due diligence, Fagadau hired Dwight Coleman to prepare an additional report on the prospect (the "Coleman Report").

Appellees Poe and Smyth formed West Fork, an entity which purchased Arkana from Surge. In order to raise the necessary capital to develop the prospect, Appellees entered into discussions with WG Energy regarding its possible purchase of a fifty percent working interest in Arkana's holdings. Pursuant to these negotiations, Poe and Smyth collaborated with Bill Lynton to craft a Business Plan for the development of the Arkoma Basin field. The Business Plan outlined a first-year development program in which Arkana would reconnect existing shut-in wells and drill additional wells. The Business Plan also projected the production volume from these wells and the revenue that the project would generate. These projections were based on the Surge and Coleman Reports as well as information taken from the Arkansas Oil & Gas Commission's website.

After negotiations with WG Energy failed, Lynton decided to invest personally in the project with Arthur Clark, a Mississippi attorney with experience in the oil and gas industry. Lynton and Clark formed Arkoma. Without Appellees' knowledge or consent, Clark created his own prospectus

using the original Business Plan and altered the data contained in the Business Plan. Clark and Lynton recruited twelve investors to become limited partners in Arkoma using this prospectus.

In October 2004, Arkoma, Arkana, and West Fork executed a purchase and sale agreement (hereinafter "PSA"). Pursuant to this agreement, Arkoma acquired an undivided fifty-percent working interest in all of the assets owned by Arkana for $1.5 million. As part of the PSA, Arkoma and Arkana executed five joint operating agreements based upon Form 610 of the 1982 version of the American Association of Petroleum Landmen's Model Form Operating Agreement (hereinafter "Model Form Operating Agreement"). Neither the PSA nor the joint operating agreements incorporated the Business Plan. As part of the PSA, Arkana received approximately $1 million in sale proceeds. West Fork and Arkana used approximately $640,000 of the sale proceeds to repay loans made by Poe, Smyth and another investor. This left Arkana with a working balance of approximately $483,000. The PSA did not contain any restrictions on Arkana's or West Fork's use of the sale proceeds.

In November 2004, other parties discovered a way to develop the natural gas reserves in the Fayetteville Shale. This discovery led to a natural gas boom in Arkansas, resulting in shortages of personnel and equipment. These shortages led to higher operating costs. In addition, it became more difficult to negotiate leases with landowners. As a result, Arkoma and Appellees decided to modify their plans for developing the prospect. The parties agreed to purchase hundreds of additional acres in the Fayetteville Shale and to renew leases around their existing lease acreage in order to prevent forced pooling. At the same time that the parties were purchasing additional leases, Arkana spent between $250,000 and $300,000 implementing the first-year development program outlined in the Business Plan. Arkana successfully completed Phase

No. 09-40011

I of the Plan, but was unable to complete Phase II due to ongoing equipment shortages and the loss of cash flow from two unproductive wells.

By March 2005, Lynton, Clark, Poe, and Smyth were looking for additional capital to develop the prospect, anticipating that they would need approximately $30 million. In September 2007, the parties began serious discussions with Touradji Capital, a hedge fund, about investing in the prospect. In a letter of intent, Touradji offered $7.5 million for 50% of the Class A units in the prospect. Negotiations broke down, however, when Arkoma refused to sign the letter of intent. Instead, Arkoma brought suit against West Fork, Arkana, Poe and Smyth for misappropriation of funds, breach of contract, statutory fraud, negligent misrepresentation, fraudulent inducement, and violations of federal and state securities laws.[1]

Pursuant to 28 U.S.C. § 636(c), the case was tried before a Magistrate Judge ("the trial court"). At the conclusion of Arkoma's case in chief, Appellees filed motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The trial court granted the motions as to Arkoma's federal and state securities-fraud claims on the ground that Arkoma had failed to show reliance on any material misrepresentation made by Appellees. The trial court also granted the motion on the breach-of-contract claim on the ground that Arkoma did not present evidence that the joint operating contracts covered property where it lost leases. A jury returned a verdict in favor of Appellees on the remaining claims. The trial court entered judgment for Appellees on December 11, 2008. Post judgment, Appellees filed motions for attorney's fees; the trial court entered an order awarding attorney's fees against Arkoma under 15 U.S.C. § 77k(e) and Ark. Code Ann. § 16-22-308.

---

[1] Arkoma appeals only the trial court's grant of judgment as a matter of law on its breach-of-contract claim and its securities-fraud claims. The remaining claims are not before us on appeal.

4

No. 09-40011

## II.

## A.

We review the trial court's Rule 50 judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009), *cert. denied*, 130 S.Ct. 1078 (2010). Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "In order to survive a Rule 50 motion and present a question for the jury, the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [its] claim." *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002) (citation omitted). "In other words, the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture." *Id.* (citation omitted).

## 1.

To succeed on its breach-of-contract claim, Arkoma must prove "the existence of an agreement, breach of the agreement, and resulting damages." *Ultracuts, Ltd. v. Wal-Mart Stores, Inc.*, 33 S.W.3d 128, 133 (Ark. 2000).[2] Arkoma maintains that the Appellees breached Article V(A) of the five joint-operating agreements, which provides,

> Arkana Operating Co. shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner, but shall have no liability as Operator to the other parties for losses sustained or liabilities

---

[2] The joint operating contracts specify that the governing law is "the law of the state in which the Contract Area is located." Both parties agree that Arkansas law applies to the breach-of-contract claim.

No. 09-40011

incurred, except such as may result from gross negligence or willful
misconduct.

Specifically, Arkoma alleges that Appellees failed to drill wells, allowed leases to expire, and failed to produce existing wells, all of which resulted in the loss of several leases in the prospect.[3] Arkoma maintains that the Appellees' actions constitute a breach of the duty to conduct operations in a "good and workmanlike manner."

Appellees argue that Arkoma failed to introduce evidence at trial that they breached any of the specific duties of the operator under the joint operating agreements. We agree. At trial, Arkoma presented the testimony of Billy Moore, who claimed that several leases were lost due to Appellees' failure to maintain necessary production levels. Even if we accept the truth of this testimony, it is insufficient to establish a breach of the operator's duty under the joint operating agreements. Applying Texas law, this court has previously held that there is no special duty on the part of an operator to maintain leases under a joint operating agreement that contained language identical to that of Article V(A). *Stine v. Marathon Oil Co.*, 976 F.2d 254, 259, 265–66 (5th Cir. 1992). Arkoma has not cited, and we have not found, any authority indicating that the result would be different under Arkansas law. Therefore, we apply our holding in *Stine* to this case. The joint operating agreements at issue impose no special duty on Appellees to maintain the leases. As we noted in *Stine*, "[p]reservation of title to the leases contained within the Contract Area is not the sole responsibility of the operator." *Id.* (quoting Ernest E. Smith, DUTIES AND

---

[3] As noted above, the trial court granted the Appellees' motion for judgment as a matter of law on the ground that Arkoma did not present evidence that the joint operating contracts covered property where it lost leases. This argument was not presented in the Appellees' Rule 50(a) motion. Arkoma argues on appeal that the trial court cannot grant judgment as a matter of law on a ground raised *sua sponte*. We need not address this argument, however, as we may affirm the grant of judgment as a matter of law on any ground even if the trial court did not rely on that ground. *See Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997).

OBLIGATIONS OWED BY AN OPERATOR TO NONOPERATORS, INVESTORS, AND OTHER INTEREST OWNERS, 32 Rocky Mtn. Min. L. Inst. § 12.03(8)(a) (1986)). As Arkoma has failed to "establish a conflict in substantial evidence" as to whether Appellees breached a duty imposed by the joint operating agreements, its breach-of-contract claim must fail. *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002).

**2.**

Arkoma also appeals the grant of judgment as a matter of law to Appellees on its federal and state securities-fraud claims. In its complaint, Arkoma asserted violations of 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5 (hereinafter "Rule 10b-5 claim") and Article 581-33A(2) of the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. Art. 581-33A(2), (hereinafter "Article 581-33A(2) claim"). Specifically, Arkoma alleged that Appellees used the projections contained in the Business Plan to entice investors, but never intended to take steps to complete those projections. The trial court granted judgment as a matter of law on the securities -fraud claims on the ground that Arkoma had failed to provide legally sufficient evidence that it had relied on any material misrepresentations or omissions contained in the Business Plan.

In order to prevail on its Rule 10b-5 claim, Arkoma must show "(1) a material misstatement or omission, (2) which occurred in connection with the purchase or sale of securities, (3) that was made with scienter, (4) harm, (5) and causation." *Mercury Air Group, Inc., v. Mansour*, 237 F.3d 542, 546 (5th Cir. 2001) (citations omitted). A Rule 10b-5 claim requires evidence that the Appellees knew that a particular statement or omission was "materially false or misleading when made." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994). To prevail on its Article 581-33A(2) claim, Arkoma must prove that (1) Appellees offered or sold a security, (2) Appellees made an untrue statement (or omission), and (3) the omission or untrue statement is the means

by which the sale of the security was made.  Tex. Rev. Civ. Stat. Ann. Art. 581-33A(2).  A claim under Article 581-33A(2) requires the plaintiff to show that the material statement or omission was false before a plaintiff purchased the security.  *See Nicholas v. Crocker*, 687 S.W. 2d 365, 368 (Tex. App. —Tyler 1984, writ ref'd n.r.e.).

As an initial matter, we note that "'projections of future performance not worded as guarantees are generally not actionable under the federal securities laws as a matter of law." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002) (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993)).  The Business Plan contains only projections; it provides no guarantees of minimum production volumes or revenue streams from the wells.

Moreover, there is no evidence that Appellees knew that the projections contained in the Business Plan were false when made.  The evidence presented at trial showed that Appellees completed Phase I and made serious efforts to complete Phase II of the Business Plan on schedule.  Although it is true that subsequent events prevented Appellees from completing Phase II, neither Rule 10b-5 nor Article 581-33A(2) imposes liability for securities fraud solely based on the fact that future projections were not met.[4] *See Isquith ex rel. Isquith v. Middle S. Util. Inc.*, 847 F.2d 186, 203–04 (5th Cir. 1988) ("Most often, whether liability is imposed depends on whether the predictive statement was 'false' when it was made. The answer to this inquiry, however, does not turn on whether the prediction in fact proved to be wrong . . . ."); *see also Herrman Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564 (5th Cir. 2002) (holding

---

[4] Arkoma's failure to present evidence that Appellees knew that the projections contained in the Business Plan were false at the time they were made is also fatal to its claim that Appellees intentionally aided Lynton and Clark in committing securities fraud in violation of Tex. Rev. Civ. Stat. Ann. Art. 581-33(F)(2).

that a claim under Article 581-33A(2) for an untrue promise of future performance requires proof that the defendant had no intention of performing the promise at the time it was made).

Arkoma also presents, for the first time on appeal, a list of fourteen alleged oral misrepresentations made by Appellees. As Arkoma did not bring these specific misrepresentations to the attention of the trial court in response to the motion for judgment as a matter of law, we will not consider them here. *See Greenberg v. Crossroads Sys. Inc.*, 364 F.3d 657, 669–70 (5th Cir. 2004).

## B.

Arkoma also appeals three of the trial court's evidentiary rulings. Specifically, Arkoma argues that the trial court erred by (1) limiting Marty Spadinger's testimony, (2) refusing to allow testimony as to how Appellees spent the PSA proceeds, and (3) limiting Lynton's testimony regarding an e-mail that Poe had sent to potential investors. We review evidentiary rulings under an abuse-of-discretion standard. *Triple Tee Gold Inc., v. Nike, Inc.*, 485 F.3d 253, 265 (5th Cir. 2007). An abuse of discretion occurs when an evidentiary ruling is manifestly erroneous. *Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 410–11 (5th Cir. 1989). Even if we find an abuse of discretion, however, we will not reverse an evidentiary ruling unless "a substantial right of the complaining party was affected." *Triple Tee*, 485 F.3d at 265 (footnote omitted).

We first address the trial court's limitation of Spadinger's testimony. Spadinger was president of Momentum Energy Corporation, which shared a working interest with Arkana and Arkoma in certain wells. Arkoma sought to introduce his testimony as to Arkana's general performance as an operator. The trial court limited the scope of Spadinger's testimony to billing disputes that Momentum had with Arkana. Arkoma asserts that this order prevented Spadinger from testifying about (1) Arkana's lack of operations on the common wells, (2) Arkana's failure to provide an audit of the common wells, (3) instances

of Arkana billing Momentum for projects without performing its obligations, and (4) Arkana's general ineptitude as an operator.

Arkoma's first three arguments lack merit. Spadinger's testimony that Arkana failed to operate on the common wells would have been cumulative of the testimony already presented regarding Arkana's failure to drill certain wells in the prospect. Excluding such cumulative evidence does not constitute an abuse of discretion. *See Leefe*, 876 F.2d at 410-11. Arkoma's argument that it was unable to elicit testimony regarding Arkana's failure to provide an audit is belied by the record; the trial court allowed a limited inquiry into Arkana's refusal to cooperate with the audit request. The record likewise shows that the Spadinger did testify about Arkana's failure to fulfill its obligations to pay vendors after receiving money from Momentum to make such payments. The fourth argument presents a somewhat closer issue as it is not entirely clear why the trial court did not allow Spadinger to testify regarding Arkana's ineptitude as an operator. In light of our holding that the joint operating contracts impose no duty to maintain leases, however, the trial court's ruling could not have affected Arkoma's substantial rights. *Triple Tee*, 485 F.3d at 265.

We next address Arkoma's argument that the trial court improperly excluded evidence as to how Appellees spent the PSA proceeds. This argument is directly contradicted by the record before us. The trial court allowed testimony on this issue.

Finally, we find no abuse of discretion with respect to the trial court's limitation of Lynton's testimony. The trial court initially permitted a limited inquiry about the contents of the e-mail, but then ruled that the e-mail was not relevant to any of Arkoma's fraud claims. The record provides ample support for this ruling. Lynton admitted that Poe was not attempting to solicit him to invest in the prospect at the time he was copied on the e-mail, approximately a year-and-a-half before the PSA was signed. Moreover, Lynton admitted that none of

No. 09-40011

Arkoma's limited partners had ever received the e-mail. In light of these admissions, we can hardly say that the decision to limit any further testimony regarding this e-mail constitutes an abuse of discretion.

## C.

Arkoma argues that the trial court's actions and comments influenced the jury and thereby denied it a fair trial. Our standard of review is set forth in *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 579 (5th Cir. 2001):

> In reviewing a claim that the trial court appeared partial, this court must determine whether the judge's behavior was so prejudicial that it denied the [defendant] a fair, as opposed to a perfect, trial. To rise to the level of constitutional error, the district judge's actions, viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor.

> Our review of the trial court's actions must be based on the entire trial record. A trial judge's comments or questions are placed in the proper context by viewing the totality of the circumstances, considering factors such as the context of the remark, the person to whom it is directed, and the presence of curative instructions. The totality of the circumstances must show that the trial judge's intervention was quantitatively and qualitatively substantial.

(internal quotation marks and citations omitted).

Arkoma first argues that the jury was prejudiced by the trial court's frequent statements that it was the Appellees' prerogative to use the PSA proceeds as they saw fit and that the Clark Prospectus was not identical to the Business Plan. After reviewing the record as a whole, we are satisfied that the trial court's comments did not confuse "the functions of judge and prosecutor." *Id.* In addition, Arkoma argues that the jury was irreparably prejudiced when the trial court erroneously ruled as a matter of law that the Appellees could do whatever they wished with the PSA Proceeds and that the Clark Prospectus had been materially altered. According to Arkoma, the trial court's formal withdrawal of the rulings and instructions to the jury to disregard them failed

11

No. 09-40011

to correct the resulting prejudice. We disagree. "[C]urative instruction[s] . . . can operate against a finding of constitutional error." *United States v. Bermea*, 30 F.3d 1539, 1571 (5th Cir. 1994) (citations omitted). Here, the trial court instructed the jury to disregard the prior rulings at the time they were withdrawn and again at the close of the case. We are satisfied that these actions corrected any possible prejudice.

In addition, Arkoma argues that the trial court improperly cross examined its witnesses and was heavily biased in favor of Appellees. "A trial judge has wide discretion over the tone and tempo of a trial and may elicit further information from a witness if he believes it would benefit the jury. However, the trial court's efforts to move the trial along may not come at the cost of strict impartiality." *Rodriguez*, 242 F.3d at 579 (internal quotation marks and citation omitted). Arkoma points to three instances of allegedly improper questioning. As Arkoma did not object to the trial court's questioning, our review is for plain error only. *Id.* To prevail under the plain error standard, Arkoma must show that an error occurred, the error was plain or obvious, the error affected its substantial rights, and "not correcting the error would seriously impact the fairness, integrity, or public reputation of judicial proceedings." *Septimus v. Univ. of Houston*, 399 F.3d 601, 607 (5th Cir. 2005) . After reviewing the record, we are satisfied that the trial court's comments were well within the trial court's broad power to "elicit facts not yet adduced or clarify those previously presented." *Rodriguez*, 242 F.3d at 579.

Finally, Arkoma argues, without any evidentiary support whatsoever, that the trial court allowed the U.S. Marshal to threaten force against its attorneys during trial. There is no evidence in the record before us that this incident occurred.

No. 09-40011

**D.**

Arkoma appeals the award of attorneys' fees to Appellees under 15 U.S.C. § 77k(e) and Ark. Code. Ann. § 16-22-308. Appellees argue that we lack jurisdiction over this claim because Arkoma filed its notice of appeal prior to the date of the order awarding attorneys' fees and failed to amend its notice or file a separate notice appealing the order. We agree. When a party files a notice of appeal from a final judgment and that judgment is filed before the court awards attorney's fees to the opposing party, that notice is not sufficient to appeal the subsequent order awarding attorney's fees. *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1269–70 (5th Cir. 1994); *Quave v. Progress Marine*, 912 F.2d 798, 801 (5th Cir. 1990). Therefore, we lack jurisdiction to review the award of attorney's fees.

For the foregoing reasons, the judgment of the trial court is hereby AFFIRMED.